## SLAWSON v. GRAND STREET RAILROAD COMPANY.

1. It is the duty of the court to dismiss a suit brought to restrain the infringement of letters-patent, where the device or contrivance for which they were granted is not patentable, although such defence be not set up.
2. The invention described in reissued letters-patent No. 4240, granted to John B. Slawson, Jan. 24, 1871, is not patentable, as it is confined to putting in the ordinary fare-box used on a street car an additional pane of glass opposite to that next the driver, so that the passenger can see the interior of the box.  The letters are therefore void.
3. Letters-patent No. 121,920, granted to Elijah C. Middleton, Dec. 12, 1871, are void.  The fare-box, the head-light of the car, and the reflector are the elements of the contrivance described in the specification and claim for lighting the interior of the box at night, and they are old.  What is covered by the letters is not patentable, as it is simply making in the top of the box an aperture through which the rays of the head-lamp are turned by means of a reflector.

APPEAL from the Circuit Court of the United States for the Eastern District of New York.

This was a suit brought by John B. Slawson against the Grand Street, Prospect Park, and Flatbush Railroad Company, to restrain the infringement of two patents, one granted to him as inventor, and the other held and owned by him as an assignee.

The one first mentioned is a reissue, No. 4240, dated Jan. 24, 1871.  The invention therein described is an improvement in fare-boxes for receiving the fares of passengers in omnibuses and street cars.

The specification describes the ordinary fare-box used in street cars and omnibuses, consisting of two apartments, the one directly above the other.  This well-known contrivance, the specification declares, was so arranged that the passenger deposited his fare in an aperture in the top of the upper apartment.  It fell upon and was arrested by a movable platform, which constituted at the same time the bottom of the upper apartment and the top of the lower.  This platform turned on an axis acted on by a lever.  When turned, the fare fell into the lower apartment, which was a receptacle for holding the fares accumulated during the trip.  Upon withdrawing the lever, the platform resumed its horizontal position, ready to

arrest the next fare deposited. The upper apartment had a glass panel on the side next the driver, so that he could see the fare as it was deposited by the passenger. This contrivance enabled the passenger to pay his own fare, and furnished a place of safe deposit for it, so that it could not be abstracted by the driver. It enabled the driver to scrutinize the fare after it was deposited, and see that it was the proper ticket or the right amount in genuine coin before it was passed into the general receiving-box.

The improvement described in the patent consists in the insertion of a glass panel on that side of the upper apartment of the box next to the inside of the car or omnibus, and opposite to the glass panel next the driver, so that when the fare is temporarily arrested in the upper apartment the passenger can see and examine it before it passes into the lower or receiving apartment. The specification declares: " By this means disputes and contentions are prevented as to the sufficiency of the amount deposited to pay the fare, or as to the genuineness of the money or tickets used for that purpose. It also enables the passenger, when he has unintentionally deposited more than the amount of his fare, to call the attention of the driver to that fact, so that he, should the passenger require the difference to be paid back to him, may report the case to the proprietor or his agent on reaching the end of the route, who will then pay the difference to the passenger, who for this purpose must ride to the office at the end of the route."

The claim of the patent is thus stated: " A fare-box having two compartments, into one of which the fare is first deposited and temporarily arrested previously to its being deposited in the other, when the former is provided with openings, covered or protected by transparent media or devices, so arranged that the passengers can see through one and the driver or conductor through the other, in the manner substantially as and for the purposes set forth."

The other patent, No. 121,920, granted to Elijah C. Middleton, assignee of James F. Winchell, and by the former assigned to the complainant, bears date Dec. 12, 1871. It also is for an improvement in fare-boxes. The specification declares as follows: " This improvement relates to the mode of illuminating

the interior of a fare-box in street-railway cars or other vehicles when used during the night, and it consists in the construction of the fare-box with suitable openings and reflectors, arranged and adapted to receive light from the ordinary head-lamp placed above the fare-box, instead of requiring a separate lamp to illuminate it as heretofore."

The specification then describes the improvement substantially thus: The ordinary fare-box, consisting of two apartments, one above the other, is constructed with an orifice in the top of the upper apartment, said top forming the floor of. the lamp-chamber. The orifice is closed with a sheet of glass, to prevent any access to the fare-box by that way. Immediately above the orifice there is placed in the roof of the lamp-chamber a reflector, in such an oblique position that it will cause the light which falls upon it to be thrown through the orifice into the upper apartment of the fare-box, in which the fare is temporarily deposited. The claim is stated as follows : " Lighting the interior of a fare-box at night by light obtained from the head-lamp of the car thrown by a reflector, I, through an opening, H, in the head-lamp box, into the chamber for the temporary detention of the fare for inspection, substantially in the manner and for the purpose set forth."

The answer denies that either of the improvements described in the patents was infringed, and that the persons therein named as the first inventors of said improvements are in fact the first inventors thereof, and avers that said improvements had been in public use and on sale in this country for more than two years before the applications for patents therefor were respectively made.

Upon final hearing the Circuit Court dismissed the bill on the ground that the patents are void because the improvements therein described do not embody invention within the meaning of the patent laws. From this decree the complainant appealed.

*Mr. Livingston Gifford* and *Mr. George Gifford* for the appellant.

*Mr. David C. Van Cott* and *Mr. Albert G. McDonald* for the appellee.

Mr. Justice Woods, after stating the facts, delivered the opinion of the court.

The appellant insists that the dismissal of a bill because the inventions described in the patents were not patentable, when no such defence was set up in the answer, is of doubtful propriety, and is a practice unfair to complainants.

The practice was sanctioned by this court in *Dunbar* v. *Myers*, 94 U. S. 187. In that case the defence set up in the answer was want of utility in the patented invention; that the patentees were not the first inventors, &c. The Circuit Court rendered a decree for the complainant for a large sum, which this court reversed, with directions to the court below to dismiss the bill on the ground, not set up in the answer, that the improvement described in the patent sued on did not embody or require invention and was not patentable, and the patent was therefore void.

And in *Brown* v. *Piper*, 91 id. 37, 44, this court, speaking by Mr. Justice Swayne, said: " We think this patent was void on its face " (because the improvement described therein was not patentable), " and that the court might have stopped short at that instrument, and, without looking beyond it into the answers and testimony, *sua sponte*, if the objection were not taken by counsel, well have adjudged in favor of the defendant."

We think the practice thus sanctioned is not unfair or unjust to the complainant in a suit brought on letters-patent. If they are void because the device or contrivance described therein is not patentable, it is the duty of the court to dismiss the cause on that ground whether the defence be made or not. It would ill become a court of equity to render a money decree in his favor for the infringement of letters-patent which are void on their face for want of invention. Every suitor in such a cause should, therefore, understand that the question whether the invention, which is the subject-matter in controversy, is patentable or not is always open to the consideration of the court, whether the point is raised by the answer or not.

We have considered the alleged improvements described in the letters-patent set out in the complainant's bill, and agree with the Circuit Court in its conclusion that neither of them

involves invention, and that both the letters-patent are therefore void.

A glance at the specification and claim of the patent granted to the complainant Slawson shows that the invention described therein consists simply in the placing, in the ordinary fare-box used on street cars and omnibuses, of a glass panel opposite to the glass panel next the driver, usually inserted in such boxes. The patent does not cover the fare-box, it does not cover the insertion in the side of the fare-box next the driver of a glass panel, nor a combination of these two elements. It consists merely in putting an additional pane of glass in the fare-box opposite the side next the driver, so that the passengers can through it see the interior of the box. Such a contrivance does not embody or require invention. It requires no more invention than the placing of an additional pane of glass in a showcase for the display of goods, or the putting of an additional window in a room opposite one already there. It would occur to any mechanic engaged in constructing fare-boxes, that it might be advantageous to insert two glass panes, — one next the driver and the other next the interior of the car. But this would not be invention within the meaning of the patent law. *Hotchkiss* v. *Greenwood*, 11 How. 248; *Phillips* v. *Page*, 24 id. 164; *Dunbar* v. *Myers, ubi supra.* It is not a combination of the fare-box, having one glass panel with an additional glass panel, but is a mere duplication of the glass panel. Doubtless, a fare-box with two glass panels, arranged as described in the patent, is better than a fare-box with only one. But it is not every improvement that embodies a patentable invention. This rule was fairly illustrated in *Stimpson* v. *Woodman*, 10 Wall. 117, in which it was held that where a roller, in a particular combination, had been used before without particular designs on it, and a roller, with designs on it, had been used in another combination, it was not a patentable invention to place designs on the roller in the first combination, and that such a change, with the existing knowledge in the art, involved simply mechanical skill, which is not patentable.

In *Brown* v. *Piper, ubi supra*, it was said, that when the invention was simply the application by the patentees of an old

process to a new subject, without any exercise of the inventive faculty, and without the development of any idea which could be deemed new and original in the sense of the patent law, it was not patentable; and it was held that the application of a process for preserving meats and fruit, which had previously been used for preserving other perishable substances, was not patentable.

In *Atlantic Works* v. *Brady*, *ante*, pp. 192, 200, a case much in point, decided by this court at the present term, Mr. Justice Bradley said: "The design of the patent laws is to reward those who make some substantial discovery or invention which adds to our knowledge and makes a step in advance in the useful arts. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures." And it was held that the placing of a screw for dredging at the stem of a screw propeller, when the dredging had been previously accomplished by turning the propeller stern foremost and dredging with the propelling screw, was not a patentable invention.

These authorities, and others that might be cited, are adverse to the appellant's case, and clearly show that the contrivance covered by the patent issued to him does not embody a patentable invention.

The same authorities apply with equal force to the patent for lighting the interior of the fare-box at night by using the head-light of the car for that purpose. The elements of the contrivance, namely, the fare-box, the head-light, and the reflector, are all old. What is covered by the patent is simply the making of an aperture in the top of the fare-box and turning the rays of the head-lamp through it into the box by means of a reflector. In other words, it is the turning of the rays of light to the spot where they are wanted by means of a reflector, and taking away an obstruction to their passage. The facts of general knowledge of which we take judicial notice teach us that devices similar to this are as old as the use of reflectors. Taylor's Ev., sect. 4, note 2; *Brown* v. *Piper*, *ubi supra*. The new application of them does not involve invention. We are of opinion that there

was nothing patentable in the contrivance described in the second patent.

The result of our views is that the decree of the Circuit Court was right and must be

*Affirmed.*