## BLACKMORE v. FORD MOTOR CO.
### No. 5816.

Circuit Court of Appeals, Sixth Circuit.
March 18, 1932.

H. A. Toulmin, Jr., of Dayton, Ohio (H. A. Toulmin, of Dayton, Ohio, on the brief), for appellant.

John Weld Peck, of Cincinnati, Ohio (Longley & Middleton, of Detroit, Mich., Cooper, Kerr & Dunham, of New York City, and Peck, Shaffer & Williams, of Cincinnati, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

Suit for infringement of claims 1 to 10, inclusive, and 22 to 29, inclusive, of Blackmore patent No. 1,437,390, granted December 5, 1922, for "Lock for Automobiles and the Like." Claims 10 and 22 are printed in the margin.[1]

The defenses are: (1) Lack of invention; (2) anticipation; and (3) noninfringement. We think the claims in suit were infringed if they were valid. The District Court found them invalid.

Long before the patent issued, it was common practice to secure curtain rods to automobile doors by fashioning the rods with square shanks and inserting them into sockets with square openings set in the top of the door near its vertical swinging edge but this installation was found to be inadequate because the rods thus perpendicularly positioned were subjected to severe strain by persons who thoughtlessly or carelessly used them as handles for opening and closing the doors and for support while entering or leaving the car. They were also affected in some measure by wind pressure upon the curtains. Blackmore proposed to minimize these evils by installing the rods more securely. The door lock was as old in the art as the door itself, and it had been the practice to attach the lock to the door by the use of screws. The lock was positioned at the swinging vertical edge of the door below its top and almost if not directly underneath the socket. Blackmore availed himself of the relative locations of the socket and lock and extended the rear or inside wall of the metal lock casing somewhat above its top, and bent the extension laterally and outwardly to form a flange. The flanges assumed different forms, but these modifications are not relevant here. Through the flange and in line with the socket in the top of the door Blackmore cut another socket with square openings. The two sockets were spaced apart. With this arrangement, the curtain rod might be readily positioned by thrusting its square shank downwardly through both sockets, and, if desired, until it came to rest upon the top wall of the lock casing. When the rod was thus installed, Blackmore's object was accomplished because the rod was more securely fastened than when the top socket alone was used.

But it does not follow that this construction was invention. The lock functioned just as it did before, and not otherwise. The same may be said of the top socket. It served, just as it had formerly, to counteract to some extent, at least, any thrust upon the upper part of the rod and to distribute the stress through the door and attached lock casing, and, if the door were closed, through the door latch into the jamb.

So far as we can determine, Blackmore's sole claim to invention lies in providing the second socket, but it is apparent that this was not invention. It is common practice with metal workers to fashion flanges and perforate them at any point and in any form desired. The second socket was a duplication of the first, just as was the second deflecting plate in Dunbar v. Meyers, 94 U. S. 187, 24 L. Ed. 34, and the second pane of glass

---

[1] "10. A lock for an automobile door, or the like, comprising a casing having a flange secured thereto, spaced above the same, and provided with an opening to receive the end portion of a rod and hold the same against turning movement relatively to said flange, and a socket member arranged in alinement with said opening, through which the rod may be inserted in said opening."

"22. The combination with an automobile door, or the like, having an opening in the upper edge thereof to receive the lower end portion of an upright curtain rod, of a lock casing mounted on said door and comprising a part provided with a socket arranged in line with said opening in the door to support said rod in said opening."

in Slawson v. Grand Street R. R. Co., 107 U. S. 649, 2 S. Ct. 663, 27 L. Ed. 576. It caused no new mode of operation. In connection with the other elements of the claims, it probably provided a more suitable fastening for the shank of the curtain rod, but this was an improvement over the operation of the first socket in degree only, and improvement in degree is not invention. Keene v. New Idea Spreader Co., 231 F. 701, 710 (C. C. A. 6); Reynolds Spring Co. v. L. A. Young Industries, 36 F.(2d) 150, 151 (C. C. A. 6).

Decree affirmed.