## PAGET v. SWARTWOUT CO.
### No. 19963.

District Court, N. D. Ohio, E. D.

Feb. 25, 1941.

Victor D. Borst, of New York City, and Percy H. Moore, of Cleveland, Ohio, for plaintiff.

Richey & Watts and Frederic Bosworth, all of Cleveland, Ohio, for defendant.

WILKIN, District Judge.

The complaint charges infringement of United States letters patent No. 2,134,143. The answer denies infringement and alleges invalidity because of lack of invention, and anticipation. The accused device is an industrial ventilator made and sold by the defendant to Goodyear Tire & Rubber Company and installed at its Akron plant. The patented and the accused ventilators were designed for installation on the roof of a building so as to emit heat, gas, and vapor, prevent rain from entering, and afford control of air and heat through the ventilators.

The defendant is a manufacturer of industrial ventilating equipment and the plaintiff was at one time employed by the defendant, although he is now engaged in other business. The defendant is a licensee under the Dexter patent No. 1,611,005. The accused construction was made and sold under said license, and royalties were paid by defendant to Dexter.

The plaintiff relies upon claim 3 of his patent, which reads: "In a ventilator, the combination of a casing consisting of side and end plates a pair of panels near the top of the casing, a plurality of spaced panels near the bottom of the casing said panels extending from side to side of the casing, said panels near the bottom of the casing underlapping the said panels near the top of the casing and forming ventilating openings therewith, dampers for controlling said openings, a strip extending from side to side of the casing at the top thereof and centrally of said pair of panels near the top of the casing and a verticle plate depending from said strip to prevent rain from entering said openings."

The claim of the patent covers a combination of elements including a casing, spaced panels, and dampers. The combina-

tion results in a ventilator which is a self-supporting unit, an elongated encased unit made up of a pair (or a multiplicity) of transverse sections or cells. The plaintiff himself testified that the essence of his invention was multiple cellular openings combined within one casing which forms a rectangular container for them, and plaintiff's counsel said, toward the close of the hearing: "We are standing on Claim 3, which calls for a combination of elements * * * separate units becoming a multiplicity of units within one frame."

Does claim 3 warrant a monopoly as broad as those statements?

As a combination of elements the plaintiff's patent has novelty. The prior art does not reveal a similar combination. In the same manner, however, in which the plaintiff's patent is distinguished from the prior art, the accused construction is also distinguished from plaintiff's patent.

The accused construction was not made in pairs of ventilator sections or cells, nor located within side and end walls comprising a casing. It employed glass for top panels. The accused construction did not employ dampers in the side openings of the several cells or sections. It used what was generally referred to as the stove-pipe damper, being a flat plate located in and controlling the bottom opening in each ventilator section. The accused construction was an assembly of more than two ventilator sections, each, however, being manufactured in accordance with the well-established Dexter process. The accused assembly was merely a multiple arrangement of Dexter devices as formerly used in a single frame. It was within the teaching of the prior art and within the ordinary skill and knowledge of mechanics. The multiples of units of course had common interior walls and were located within and supported by the walls and ends of the openings in the roof. But there was no dispute that each section of the accused construction was the same in structure, function, principle and mode of operation as the non-accused single section of the Dexter construction, Exhibit 33.

Plaintiff asserted that his arrangement of a multiplicity of individual cells or sections in one structure, was something not theretofore found in the art. But that assertion was not sustained by the proof. The practice of combining two or more cells or sections within the outer walls of the opening was taught by Reeves British patent No. 1080 of 1874 (Defendant's Exhibit 55). Multiplicity of sections was also revealed by Darroch, No. 1,092,094 (Defendant's Exhibit 3), Swaine, No. 661,387 (Defendant's Exhibit 46A), and also by Swartwout catalogue (Defendant's Exhibit 19). Plaintiff contends that his invention covers the transverse arrangement of such sections in the roof opening and the casing within which they are arranged. But this court cannot construe claim 3 to grant a monopoly on such transverse arrangement, or on the arrangement within a casing. Such arrangements are not patentable invention.

Counsel for plaintiff summarize their contention thus: "While we do not contend that the Paget patent is basic, Paget was first to accomplish the function of ventilating a large opening in a roof with an efficient self-supporting multi-cell unit, and, under the rule that he who first accomplishes a function is a pioneer, Paget is in that sense a pioneer."

As we have seen, the prior art taught combination of units for ventilation. Furthermore, if plaintiff had been the first to multiply ventilating sections within the opening, his claim would be denied by the law which holds that no patent can monopolize pairing, duplication, or multiplication of old devices. Blackmore v. Ford Motor Co., 6 Cir., 1932, 56 F.2d 806. And, as stated above, the location of such multiple sections in a casing and the· placing of them in transverse arrangement cannot be called invention. A generic or basic patent should, of course, never be limited to the precise instrumentality disclosed. A basic, generic, or pioneer patent is entitled to a wide range of equivalents. But in this crowded art, the plaintiff was unable to substantiate his claim to a pioneer position.

Since, however, the art of record fails to disclose the specific means defined, and since such means is a useful and meritorious arrangement, plaintiff's claim is allowed as to that means; but it cannot be extended beyond the limitations of "the combination" set forth in claim 3.

The defense of invalidity has not been sustained. But since the charge of infringement has also failed, the bill of complaint is dismissed at plaintiff's cost.