**572**

Eugene G. SEARY, Plaintiff,

v.

EMIL KOUDELKA, INC., Defendant.

United States District Court
S. D. New York.

April 6, 1960.

Myron Cohen, New York City, for plaintiff.

Harry Price, New York City, for defendant.

THOMAS F. MURPHY, District Judge.

Plaintiff as owner of U. S. Patent No. 2,495,142, entitled "Transparency Mount and Method of Making Same" brings this action alleging infringement by defendant of claim 4 thereof and contributory infringement of claims 1, 2, 3 and 5.

Defendant counterclaims for a declaration of the patent's invalidity as to all claims, non-infringement, and to enjoin plaintiff from threatening defendant and its customers with suit.

Plaintiff's patent was issued January 17, 1950. Suit was instituted on June 17, 1957. After suit was started plaintiff assigned the patent to the Seary Manufacturing Company, a partnership consisting of plaintiff and one Mahlon F. Michelbach, named by defendant herein as an additional defendant. The subject of the patent is a one-piece book-type cardboard mount, divided into two sections by a fold line, and having an aperture in each section which register with each other when the sections are folded together, after the insertion of a transparency. The "invention" is simply that around the edge of one of the apertures are little bumps, or semi-circular embossments, within the confines of which the transparency is placed so as to position it with regard to the apertures. These little bumps or embossments are formed by a die-punch which presses them upward from the plane of the cardboard, at the same time creating correlative depressions on the under side, which becomes the outer surface in the finished mount. When the transparency is placed within the circle of bumps or embossments the mount is folded book-style, and pressure and heat applied— the heat melting a coating of glue (thermoplastic material) spread on the surface of one of the sections—and the pressure, while facilitating the bonding together of the sections, concomitantly presses the bumps or embossments substantially back into the surface of the

cardboard from where they were raised, thus smoothing the outer surface to the extent that the depressions are thereby filled in again. The finished product is a comparatively thin, somewhat firm, relatively smooth-surfaced transparency mount.

The purpose or function of a transparency mount is to permit the handling of the transparency without finger-marking the film, and to permit use and viewing of the transparency in a projector or other viewing mechanism.

Plaintiff made his invention while employed as chief chemist for a color processing firm in late 1947, and filed his application for a patent in October, 1948. It is interesting to note that his firm declined the property right in the invention to which it was entitled, not recognizing enough merit therein to justify the expense of filing for a patent, according to plaintiff's expert who at the time was vice-president of that firm. The firm, we are told, nevertheless purchased and used plaintiff's mount exclusively from 1948 to 1955.

At the time of this invention there were principally two types of cardboard mounts used in the industry, viz., the "Eastman-Kodak" type which was similar in all respects to plaintiff's except that in place of embossments projecting up out of the stock of the mount, and distributed around the edge of one of the apertures, this type added a separate paper mask glued to one section of the mount which provided a frame around the aperture in that section, and the thickness of this mask formed a recess into which a transparency was to be placed. The mask in the Eastman mount, and the surrounding bumps or embossments in plaintiff's mount both serve to index or register the transparency with the aperture, but the advantage claimed for plaintiff's mount is that it is all one piece, the bumps being part of the mount itself, and also in that the bumps can be, and are made to rise above the plane of the mount higher than the thickness of the added paper mask of the Eastman mount, and thereby re-

ducing or eliminating the possibility, ever present in the latter, of the transparency slipping out of register in the process of sealing. These bumps are thereafter pressed back, at least to the thickness of the transparency, when pressure is applied in the sealing process.

Plaintiff points out that the above-mentioned advantage may not be gained in the Eastman mount by adding a thicker mask because, since the mask cannot be reduced in thickness by pressure as the embossments can, a transparency in such a mount with a thicker mask would have some play in it, move about in its confines to the extent that the mask is thicker than it, and possibly pop out. The other type mount in use was the "Mercury" mount, and this type utilizes tabs die-punched into the cardboard stock of the mount in somewhat the same manner as plaintiff's embossments are die-punched, but in registering the transparency with the aperture in the Mercury mount, the transparency is inserted *under* the tabs, so that when the sections are folded together, unlike plaintiff's embossments which are pressed back into the stock, the tabs remain above the plane with the film inserted beneath. The comparative result with the Mercury mount is, a slower and more cumbersome operation, lower accuracy of indexing, a thicker slide, and holes or depressions on the outer surface from whence the tabs were punched creating the danger of jamming in a viewing mechanism.

Among the problems claimed by plaintiff to have been solved by his invention which were extant at the time (as indicated by the above) were the following: (1) more convenient and positive positioning of the transparency on the mount; (2) elimination of slipping or cocking of the transparency during mounting process, and (3) a thinner product usable in projectors or other viewing mechanisms without danger of jamming.

Of these, No. 1 and to some extent No. 2 are undoubtedly the merit in plaintiff's invention, in addition to its being manufactured in one operation as a one-piece

mount. It is undisputed that the Eastman type mount still accounts for about 85% to 90% of the market, but this is explained by plaintiff as owing to the fact that about 70% of the market is controlled by two processors who themselves manufacture that type mount, and therefore to that extent it is a captive market closed to plaintiff. Of the remaining free-market plaintiff claims roughly one-half.

Of the prior art cited by defendant we find that but three need be discussed. The first is the Koster patent which was the first to use a one-piece fold-over book-type mount, with the inside coated with an adhesive. This mount did not provide for any registration means such as plaintiff's embossments which form a seat into which the film is placed.

The next patent is that of Staehle which is in essence the Eastman type mount as described above, with its added paper mask.

The third, and last relevant patent in the court's opinion is the Baldwin patent which shows a recognition of the problem of providing a clearly defined seat for the transparency. This patent deals with a metal mount, not of the book-type, with struck-up projections from the metal surface in like fashion that plaintiff's embossments are raised from the cardboard surface and distributed around the aperture of the mount. However, the Baldwin projections are not designed to be flattened out or pressed back into the surface of the metal mount but are intended to penetrate corresponding holes in flap portions of the mount which fold upon them.

All three of the aforementioned patents were made of record and apparently distinguished by the Patent Office in the processing of plaintiff's application. In order to sustain the validity of plaintiff's patent, under the facts of this case, it must appear to be a "new and useful process, * * * manufacture, or composition of matter, or [a] new and useful improvement thereof * * *." (35 U.S.C.A. § 101), and it must not appear that the "differences between the subject matter * * * and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C.A. § 103.

Plaintiff starts out with a presumption of validity from the issuance of the patent, with the burden upon defendant to prove invalidity by clear and convincing proof. Georgia-Pacific Plywood Corp. v. United States Plywood Corp., 2 Cir., 1958, 258 F.2d 124, 132–133; Celanese Corporation of America v. Essley Shirt Co., 2 Cir., 1938, 98 F.2d 895; 35 U.S.C.A. § 282. Defendant here has not carried that burden. Moreover, its conceded effort to avoid plaintiff's patent in designing its accused products, some of which substantively imitate plaintiff's, is strong evidence contradicting its position herein. Kurtz v. Bell Hat Lining Co., 2 Cir., 1922, 280 F. 277, 281. Proceeding with our duty nonetheless to inquire independently into the question of invention, novelty and utility, Slawson v. Grand Street P. P. & F. R. Co., 107 U.S. 649, 2 S.Ct. 663, 27 L.Ed. 576; Continental Farm Equipment Co. v. Love Tractor, Inc., 8 Cir., 1952, 199 F.2d 202, 204, we find little difficulty in holding that plaintiff's development with respect to the manner in which an accurate indexing means is incorporated into the mount, with its peculiar retractability, has produced something novel and useful, not a mere embellishment of the mount, but an added element constituting a substantial innovation, and involving "more ingenuity * * * than the work of a mechanic skilled in the art." Sinclair & Carroll Co., Inc. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644. This clearly is novelty with utility, and equally clearly, not anticipated by any prior art. From where we view the developments in the art, in retrospect, we cannot say that plaintiff's development was a mere mechanical innovation which would have been obvious to one skilled

in the art. It rises in our opinion to the dignity of invention.

We come now to consider the specific claims of the patent, and without setting them forth, in extenso, suffice it to say that the first three relate to the method or actual steps carried out in mounting a transparency, the fourth deals with the mount itself, and the fifth relates to the finished product, that is, a sealed slide-mount with a transparency in it.

Our discussion above with respect to invention dealt with claim No. 4, and in accordance therewith we hold that claim to be valid. The remaining claims we hold to be invalid. The first three, though set in formal language, amount to no more than simple directions on how to close a book-type piece of cardboard with a transparency sandwiched in between. Plaintiff's contention for validity rests upon the fact that in sealing the mount, transverse pressure is applied which concomitantly flattens out the embossments. But that is a mere incident to the application of pressure and similar pressure sealing was long practiced before plaintiff's invention. While the flattening result may be by design, it is at the same time unavoidable if the mount is to be sealed at all, and in our opinion, insufficient to sustain plaintiff's claim to a monopoly with respect thereto. Since we hold the method invalid, we fail to discern how validity may be upheld as to the finished product to which claim No. 5 relates.

Our disposition as to the claims other than No. 4 also disposes of plaintiff's complaints of contributory infringement, for their rationale was that defendant's customers of necessity caused the embossments to be obliterated or pressed back into the mount in using defendant's product, and as to No. 5, simply using the mount to form a slide. We dismiss the complaint, therefore, insofar as it relates to contributory infringement.

As to direct infringement, we find defendant guilty thereof with respect to its manufacture and sale of mounts as illustrated by exhibits 3, 4 and 8, and we find non-infringement as to the mounts illustrated by exhibits 1 and 2 and exhibit E. (Plaintiff conceded in his brief that exhibit 9 does not directly infringe, but asserted that it contributorily infringed claims 2 and 5 which we have held invalid). The infringing mounts differ from plaintiff's only in that defendant employs a series of straight die-punched embossments surrounding the aperture as opposed to plaintiff's semi-circular embossments. We consider that to be a difference without a distinction.

The only non-infringing mount that requires discussion is the type exemplified by exhibits 1, 2 and E. This mount has on one side of one section, three straight die-punched projections or embossments, and on two of the remaining sides of that same section, parallel to each other, there are straight knife cuts across the surface defining a margin for the transparency. We cannot consider this mount to be the equivalent of plaintiff's, and certainly, it does not have the attributes thereof. Plaintiff strains to bring these exhibits within the language of claim 4, and the mistake is obviously in misconception of the patent grant. His argument assumes that the language of the claim determines its scope without reference to the invention which it attempts to describe. Plaintiff would seem to believe it can exclude others from making transparency mounts which have embossments around the apertures as a positioning mechanism, irrespective of how they are formed or their similarity to plaintiff's design, so long as they fit within the dictionary definition of the term "embossments." The fact is, that not only do the claims limit the scope of the patent, but they in turn are limited by rational reference to the invention they describe. The patent is on the invention, not on the descriptive words.

In making the non-infringing mounts defendant cuts into the stock on the inner surface of one section of the mount, along the border of the aperture, and when so cut, a thin line of the cardboard stock rises above the plane of the mount. This may well fit within the term "embossment" in the same sense logically as

any raised portion in a given plane is an embossment, but it is vastly different than the embossments on plaintiff's mount. These do not embody the essence of plaintiff's invention. Interestingly enough, in plaintiff's specifications it is in effect indicated, that in order to achieve sufficiently high positioning embossments or projections by cutting into the stock, such cuts would have to be to a depth that would substantially weaken the structure of the mount, and that such weakening effect does not occur with plaintiff's method.

A decree may be entered in accordance with this opinion. Settle decree on notice.

This opinion is filed in lieu of findings of fact and conclusions of law.