MUNSON *v.* MAYOR, ALDERMEN AND COMMON-
ALTY OF THE CITY OF NEW YORK.

MAYOR, ALDERMEN AND COMMONALTY OF THE
CITY OF NEW YORK *v.* MUNSON.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

Argued February 2, 3, 1888. — Decided February 13, 1888.

A blank book, with pages numbered and ruled into spaces, in which bonds
and their coupons on being presented and paid, may be pasted in the order
of their numbers — the bonds on successive pages, and each bond and its
coupons on the same page — or, when any bond or coupon is paid with-
out being surrendered, memoranda concerning it may be made, if under
any circumstances a patentable invention, is not so if similar books have
been in use before, differing only in grouping the coupons according to
their dates of payment, and in having no spaces for the bonds.

THIS was a bill in equity by Francis Munson against the
Mayor, Aldermen and Commonalty of the City of New York
and the comptroller of the city, for the infringement of letters
patent granted to Munson on April 2, 1867, for "new and use-
ful improvements in preserving, filing and cancelling bonds,
coupons, certificates of stock, &c.," consisting, as described in
the specification, "in providing a book or other register with
pages corresponding in size, style and number with the bonds,
coupons, certificates, &c., to be used, on which pages the said
bonds, coupons, or other certificates, when paid, are pasted or
otherwise attached, and thus preserved and cancelled, as here-
inafter more fully explained."

The specification then, after observing that bonds and cou-
pons, when paid, are usually either filed away or destroyed,
and that, before or after being paid, they are often lost or
stolen, by which the community is constantly being defrauded
more or less, proceeded as follows: "To prevent this, I have
invented a system of preserving, filing and cancelling such

documents, which system will not only prevent such fraudulent practices, but also present at all times a full and perfect history or record of all transactions in relation to each and all of said documents. To accomplish this, I provide a book or set of books, having each page printed or ruled to correspond in size and style with the bond and its coupons, or other document, whatever it may be, with a heading showing the number, date when issued, to whom issued, when and where payable, amount, what issued for, rate of interest and when and where payable, together with such other facts as may be necessary to form a perfect record of the document. The pages are numbered consecutively with the numbers corresponding to the numbers on the bonds or other documents. When any of the coupons are presented and paid, they are cancelled and then pasted or otherwise secured in their proper place upon the page, each place for them being numbered. When the bond itself is paid, it is likewise attached in the place on the page provided for it. If the holder should by any means be dispossessed of one or more of the coupons or bonds, upon presentation of the proper evidence he would be paid, but not having the coupon or bond to surrender, there would be entered in its place upon the page a record of the facts in the case, so that if at any future time said coupon or bond should be presented for payment by a person not entitled to it, the record of all the facts relating to it would be ready at hand, and could be referred to at once by examining the proper page. By this method of arranging them, the number is always an index, so that if it is desired at any time to ascertain any fact in relation to any particular bond or its coupons, it is only necessary to turn to the page having the same number. In case a large series of bonds or certificates are used, several books would be required, and in that case the pages of each succeeding book would commence with the number next following that of the last page of the preceding volume, so as to make the numbers of the pages continuous from the beginning of the first book to the ending of the last. It will, of course, be understood that each separate set or series of bonds, certificates of stock, or other similar docu-

ments, will require a set of books specially prepared for them to correspond with the peculiar character of the document, the system or general plan, however, being the same in all cases, the details only being varied to suit the circumstances of the case."

The patentee claimed as his invention : " 1. The preserving, filing and verifying of bonds, coupons, certificates and all similar documents, by the means and in the manner substantially as herein set forth. 2. The book or register, constructed and used as and for the purposes set forth."

The defences set up in the answer were that the plaintiff was not the first and original inventor of the alleged improvement; that long before his alleged invention it was known to and used by William E. Warren and three other persons named, all residing in the city of New York; that the defendants had made no profits from its use; and that it was not patentable. The plaintiff filed a general replication.

By the evidence taken in the case, it appeared that from 1872 there had been used, in the office of the comptroller of the city of New York, books like those described in the plaintiff's patent, except that the coupons were pasted on each alternate page and the bond on the opposite page; and that as early as 1853 Warren devised and used books for preserving the coupons of a railroad company, in which all the coupons payable on the same date were pasted in succession in the order of the numbers of the bonds to which they belonged, in ruled spaces of the proper size, above which the numbers of the coupons and of the bonds had been previously written or printed, and with a description of the bonds and the date of payment of the coupons written at the beginning of each series of coupons payable at the same date, but the bonds themselves were not pasted in, except a single one at the beginning of each book.

Upon the pleadings and proofs, the Circuit Court held that the plaintiff was the first and original inventor of the improvement, and that the patent was valid; and entered an interlocutory decree in his favor for an injunction and an account. 18 Blatchford, 237. The case was then referred to a master,

who reported that upon the evidence taken before him (which need not be stated) the plaintiff was entitled to recover the sum of $6202.40 as profits. Exceptions taken by the defendants to his report were sustained. 21 Blatchford, 342. A final decree was entered, awarding to the plaintiff the sum of six cents damages, and ordering that the costs before the interlocutory decree be paid by the defendant, and the costs since that decree by the plaintiff. Both parties appealed to this court.

*Mr. Royal S. Crane* for Munson cited, to the point of the patentability of his improvement: *Hawes v. Washburne*, 5 Pat. Off. Gaz. 491; *Dewey v. Ewing*, 1 Bond, 540.

*Mr. Frederic H. Betts* for the other parties. *Mr. J. E. Hindon Hyde* was with him on the brief.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

What the plaintiff, in different parts of his specification, calls his "improvement," his "system," and his "invention," consists in providing one or more blank books, resembling common scrap-books, of which each page will hold a bond and its coupons, and has a heading describing the bond, and all the pages are numbered and ruled into spaces, in which the bonds and the coupons, on being presented and paid, may be pasted in the order of their numbers — the bonds on the successive pages, and the coupons of each bond on the same page with it — or, when any bond or coupon is paid without being surrendered, memoranda concerning it may be made. The claim is for the so preserving, filing and verifying of the bonds and coupons, and for the book so constructed and used.

If upon the face of the specification this could be considered as an "art, machine, manufacture, or composition of matter," within the meaning of the patent laws, (upon which we express no opinion,) it is quite clear that, in the state of previous knowledge upon the subject, there was no patentable novelty

in the plaintiff's scheme; inasmuch as the only difference between it and the earlier scheme of Warren was that in Warren's books there was no place for the bonds, and the coupons were grouped according to their dates of payment, instead of being grouped together with the bonds to which they respectively belonged. The providing of spaces for the bonds, and the change in the order of arrangement of the coupons, cannot, upon the most liberal construction of the patent laws, be held to involve any invention.

*Decree reversed, and case remanded to the Circuit Court, with directions to dismiss the bill; the original plaintiff to pay the costs in both courts.*