### THOMAS DAY CO. v. DOBLE LABORATORIES.

#### No. 6050.

Circuit Court of Appeals, Ninth Circuit.
July 7, 1930.

Rehearing Denied Aug. 26, 1930.

See, also, 41 F.(2d) 51.

George L. Wilkinson, of Chicago, Ill., Langdon Moore, of Bloomington, Ill., and John H. Miller and A. W. Boyken, both of San Francisco, Cal., for appellant.

Lyon & Lyon, Frederick S. Lyon, Leonard S. Lyon, and Henry S. Richmond, all of Los Angeles, Cal., and Charles M. Fryer, of San Francisco, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge.

The appellee, a research corporation and the holder of two combination patents —Doble No. 1,131,683, issued March 16, 1915, and Doble No. 1,359,042, issued November 16, 1920—by its bill of complaint charged the appellant with infringement of claim No. 1 of the first and claims 2, 3, and 4 of the second, in that it was selling in California what was referred to in the record as the Oil-O-Matic heating device manufactured by the Williams Oil-O-Matic Heating Corporation of Bloomington, Ill. While the manufacturer was not formally made a party, through its counsel it conducted the defense in the name of appellant. Generally speaking, the two patents cover apparatus for the burning of oil and transmitting the heat thus generated to a heat-absorbing medium, such as water, for steam power or house-heating purposes; in the first, use for propelling automobiles by steam is given prominence, and in the second not only automobile boilers are specifically mentioned but "water heaters and house heaters." The alleged infringing device, Oil-O-Matic, is specifically a house-heating apparatus devised and put on the market subsequently to both patents. By the court below the patents were held valid and the Oil-O-Matic device an infringement. The following is claim No. 1 of the earlier patent: "In an automatic fuel regulating system the combination of means adapted to receive a heat-absorbing medium, a burner associated therewith, means for forming a combustible mixture, pressure-creating means for forcing the mixture to the burner, a sparking mechanism associated with the burner, a source of electricity, a motor supplied from said source and operating said mechanism and said pressure-creating means, and means, responsive to changes in conditions in the heat-absorbing medium, for controlling said motor."

And claim 2 of the later patent is as follows: "The combination with means adapted to receive a heat-absorbing medium, of a fuel mixing device associated therewith, means for producing a spray of air and fuel in said device, means for igniting said spray, means for adding air to the ignited spray, means for driving said spray-producing means and said air adding means, and means responsive to changes in conditions in the heat-absorbing medium for controlling said driving means."

Claim 3 thereof differs from 2 only in that it is a little more specific touching the means for producing the spray of air and fuel, the means for adding air to the ignited spray, and means for driving the spray-producing and air-adding means. And claim 4 differs from 3 only in that at the end thereof is added the last element specified in claim 2.

It is familiar knowledge that any reasonable measure of combustion of heavy oils is conditioned upon their first being broken up into fine particles and mixed with air so that there may be present a sufficient available supply of oxygen. Hence to get the best results they are to be vaporized or atomized and fed to the burner in the form of a spray or "mist" in a combustion chamber having an ample supply of air, heated to a comparatively high temperature.

As embodied in the concrete device exhibited by the drawings, the invention covered by the first patent may be thus described: As already noted, it was intended primarily to operate automobiles by using steam power instead of the explosive agency of gasoline employed in the more common form of automobile engines. The steam is to be generated in an ordinary tubular boiler by the application thereto of heat from burning kerosene or other heavier oils. Through separate conduits oil and air, in measured quantities, are introduced into the casing or chamber of a rotary fan, where they are thoroughly stirred and mixed by the fan, and the combustible mixture thus formed is then forced on through a discharge duct into a preheated chamber under the burner, and thence through slots or holes, into the burner or the combustion chamber beneath the boiler, where it is ignited by an electrical sparking device. The elements of the whole mechanism are so interrelated and co-ordinated that it is automatically operated by electrical means which in turn are dependent upon, or automatically regulated by, the temperature

**8**

or pressure condition of the water in the boiler. ·

The later patent differs from the first primarily in that it employs a two-step process for forming the combustible mixture instead of one; that is to say, in this device the oil and a relatively small quantity of air are first mixed in a chamber provided for that purpose, this rich mixture is there ignited by electrical means, as under the other patent, and the flaming mass as it flows forward towards the combustion chamber underneath the boiler is by means of a fan supplied with such an additional amount of air as is requisite for complete combustion.

By the plaintiff it is scarcely controverted that in structure and separate functions the several elements of the devices are old, but, as previously noted, the patents are for a "combination," and it contends that in the unitary result it has achieved a substantial advance over the prior art, and hence that in the combination there is patentable novelty. In Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 318, 29 S. Ct. 495, 500, 53 L. Ed. 805, the Supreme Court said: "A combination is a unit of elements, which may be partly old and partly new, or wholly old or wholly new. But, whether new or old, the combination is a means—an invention—distinct from them. They, if new, may be inventions and the proper subjects of patents, or they may be covered by claims in the same patent with the combination. * * * In making a combination, an inventor has the whole field of mechanics to draw from."

And in a companion case of the same title (213 U.S. 325, 332, 29 S. Ct. 503, 505, 53 L. Ed. 816) the court said: "A combination is a composition of elements, some of which may be old and others new, or all old or all new. It is, however, the combination that is the invention, and is as much a unit in contemplation of law as a single or noncomposite instrument."

■ But it is also to be borne in mind that "there is no invention in merely selecting and fitting together the most desirable parts of different machines in the same art, if each operates the same in the new machine as it did in the old and effects the same result." Ray v. Bunting Iron Works (C. C. A.) 4 F. (2d) 214, 215. "The selection and putting together of the most desirable parts of different machines in the same or kindred art, making a new machine, but in which each part operates in the same way as it operated before and effects the same result, cannot be invention; such combinations are in the na-

ture of things the evolutions of the mechanic's aptitude rather than the creations of the inventor's faculty." ·Huebner, etc., v. Mathews etc., Co. (C. C. A.) 253 F. 435, 447.

■ With these principles in mind it is not entirely clear to us, in view of the state of the prior art and of certain patents (referred to in the footnote), the plaintiff discloses invention. But the rule seems to be that, when the question of patentability is close or in doubt, the presumption of validity is to be regarded as controlling (Cantrell v. Wallick, 117 U. S. 689, 6 S. Ct. 970, 29 L. Ed. 1017; Coffin v. Ogden, 18 Wall. 120, 124, 21 L. Ed. 821), and we therefore feel constrained to hold the patents valid.

■ However, it is clear, we think, the inventions are not to be classed as in any sense basic or generic, but merely constitute a short step in the advancement of the art. The novelty, such as there is, consists, not in a general conception of the possibility of some combination of the well-known elements, but of a specific concrete combination thereof. Hence, while the monopoly granted by the patent is not to be limited to the identical devices exhibited in the drawings or prescribed in the specifications, the range of equivalents is necessarily narrow. Under that view of the case we are of the opinion the defendant's heating device does not infringe. It is to be conceded that in many respects, both in mechanical construction and functioning, it closely resembles the Doble devices. But a detailed description is not thought to be necessary, for we are concerned with points of difference rather than of resemblance. A marked difference between it and that of Doble is found in the combinative relation and functioning of the sparking element. In the latter this is so constructed and connected that it operates continuously when the motor and fan are running; it never ceases functioning while the burner is going. In the Oil-O-Matic, this element functions for a few seconds—only long enough once for all to fire the combustible mixture—whereupon it is automatically cut out. Another important difference relates to the element defined in the patents as "means responsive to changes in conditions in the heat-absorbing medium for controlling said motor." The explanation of this element, as well as that just considered, is doubtless to be found in the fact that primarily the Doble device was intended for use in supplying motive power to engines. An engine may operate at different speeds, and hence will require varying amounts of steam. Accordingly, there must

be means not only adequate to supply fuel for full-speed power but fuel in varying amounts in response to the ever-changing demands for fluctuating speeds. There must be an automatically operated control. This is effected by means of a steam pressure-operated switch cutting in and cutting out units of a group of battery cells and thus increasing or decreasing the speed of the electric motor. In no such sense is the operation of the Oil-O-Matic "controlled." It is exclusively a heating device, and hence there is no need to provide for rapidly fluctuating demands for heat. It either runs at a predetermined capacity or not at all. Its motor can be completely stopped, but its speed is not variable. It can be stopped or started by means of a thermostat actuated by room temperature or it can be stopped by excessive steam pressure, but, we repeat, it either stops or runs at an unchanging speed.

Being of the opinion that due to these two substantial differences there is want of the requisite identity to constitute infringement, we refrain from discussing the question whether the Oil-O-Matic embodies the two-step process of the second Doble patent, touching which there is a large volume of evidence. We are inclined to think there is an additional supply of air after the mixture is ignited, but, upon the question whether the mechanical means employed by the defendant are to be deemed equivalents of that element in the Doble device, we intimate no opinion.

Reversed with directions to dismiss the complaint.

FOOTNOTE.—Warner, No. 707,992, issued August 26, 1902; Walker, No. 886,100, issued April 28, 1908; Jennings, No. 1,137,-328, issued April 27, 1915 (application filed July 18, 1907); Good, No. 1,207,897, issued December 12, 1916 (application March 6, 1914), and No. 1,231,152, issued June 26, 1917; and Serpollet (foreign), No. 1857, issued 1908.