## KESZTHELYI v. DOHENY STONE DRILL CO. et al.

### No. 6688.

Circuit Court of Appeals, Ninth Circuit.

May 23, 1932.

Rehearing Denied June 24, 1932.

**4.**

Charles C. Montgomery and Fred Mansur, both of Los Angeles, Cal., for appellant.

Wellborn & Wellborn and William L. Connor, all of Los Angeles, Cal., for appellees.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from a final decree of the District Court in favor of appellees in a suit in equity for infringement of letters patent No. 1,474,905 issued to appellant on November 20, 1923, for a new and useful improvement in tool joints used in rotary drilling of oil wells.

In his patent specifications appellant explains that in rotary drilling the bit cutting the formation is carried at the lower end of the string of drill pipe; that in order to withdraw the bit for sharpening or replacement, it is necessary to pull up the drill pipe, uncoupling it at intervals usually of three or four lengths of the pipe, for convenience in handling; that it is therefore necessary to provide a tool joint at such intervals to prevent injuring the threads of the pipe by frequent coupling and uncoupling; that one of the operations in rotary drilling is to pump a stream of mud laden fluid down through the drill pipe and through the bit, and to do this it is necessary to apply considerable pressure at the upper end of the drill pipe so that in the ordinary type of tool joint it is difficult to insure tight joints which will withstand the pressure necessarily applied; that tool joints as ordinarily constructed, consist of a pair of steel collars, one of which is screwed upon each of the contracting ends of the drill pipe, using the threads with which the pipe is ordinarily provided; that one of the collars has a pipe or pin with a steep taper and coarse threads and the other collar having a box into which this pipe or pin is threaded; that it is the common practice to set up these tool joints by the use of the power driven rotary table so that the friction on the threads between the box and the pin is very great, sometimes causing the box to spread so that it is not an uncommon thing for the joints to become loose or even unscrewed. The objects of the patent in suit as stated by appellant in his specifications are "to provide a novel form of tool joint in which the friction on the threads is not entirely depended upon to hold the joint together but supplemental frictional means are provided for this purpose" and "to provide auxiliary means of insuring a tight joint at all times."

The following drawing, being Fig. 1 in the patent, shows a form of appellant's device most nearly like that of the appellees:

FIG. 1.

The commercial application of the patented device is shown by the following photographs, the first showing the couplings connected and the second showing them separated:

**6**

In appellant's patent he describes his device with reference to Fig. 1 as follows:

"In the form shown in Fig. 1, 11 and 12 are the adjacent ends of two strings of drill pipe, the pipe 11 having a collar 13 and the pipe 12 having a collar 14 screwed thereon. Formed on the collar 13 is a projection 15 which is externally threaded with a coarse tapered thread as shown. Surrounding the projection 15 is a groove 16 and outside the groove is a shoulder or lip 17 which is provided with a conical opening. The collar 14 has an external conical surface 18 which is of proper taper and size to fit into the groove 16 inside the lip 17 as the joint is screwed home. The collar 14 is also provided with an internal threaded recess 19 into which the projection 15 may be threaded. * * * The parts are so proportioned that when the collars are screwed home, *there is still a little space there between* on all surfaces which are at right angles to the axis of the pipe. (Italics ours.)

"In this preferred form of my invention, it is possible to obtain a very tight joint between the collars 13 and 14 due to the tapered lip 17 which cooperates with its complementary part on the collar 14. This tapered surface not only acts to produce a tight joint independent of the threads between the parts, but it also tends to increase the friction between the two collars 14 and 13, thus preventing the joints from coming unscrewed and the attendant expensive fishing jobs that often result from such unscrewing."

The claims of the patent are as follows:

"1. A tool joint comprising: a primary collar adapted to be secured to a joint of pipe and having an opening therethrough, said opening being in open communication with the interior of said pipe; a secondary collar adapted to be secured to a joint of pipe and having an opening therethrough, said opening being in open communication with the interior of said pipe; a lip formed on the outer edge of said primary collar and enclosing a groove; a projecting portion of said secondary collar fitting inside said groove and inside said lip; and threaded means for forcing said collar towards each other in an axial direction.

"2. A tool joint as in claim 1 in which the interior surface of said lip is conical and the projecting portion of said secondary collar fitting inside said conical surface is also coned to fit *in fluid tight relationship therein.*"

"5. A tool joint comprising: a primary collar adapted to be secured to a joint of pipe and having an opening therethrough in open communication with the interior of said pipe a secondary collar adapted to be secured to a joint of pipe and having an opening in said primary collar: a lip formed on the outer edge of said primary collar and enclosing a groove; a projecting portion of said secondary collar fitting inside said groove and inside said lip; a conical projection having an external thread and formed centrally on said primary collar; and an internally threaded portion on said secondary collar into which said projection fits and is threaded." (Italics ours.)

The other claims are not here involved.

Although appellant's patent drawings show a space (16″) and the specifications refer to it, nowhere in the patent is the purpose thereof explained, nor is such space made the subject of a claim, unless, as appellant contends, the claim of a "fluid tight relationship" necessarily carries with it as a part of the claim the showing in the specifications and drawings as to such space and the idea of the wedging action. Rev. St. § 4888, 38 Stat. 958, 35 USCA, § 33, provides as follows: "Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor * * * and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery."

The law is well settled that, although the claims of a patent may be construed and interpreted by reference to the drawings and specifications, they may not thereby be enlarged. Yale Lock Mfg. Co. v. Greenleaf, 117 U. S. 554, 6 S. Ct. 846, 29 L. Ed. 952; White v. Dunbar, 119 U. S. 47, 7 S. Ct. 72, 30 L. Ed. 303; Howe Machine Co. v. National Needle Co., 134 U. S. 388, 10 S. Ct. 570, 33 L. Ed. 963; McCarty v. Lehigh Valley R. Co., 160 U. S. 110, 16 S. Ct. 240, 40 L. Ed. 358.

We agree with the trial court that claim of the patent for a joint, parts of which are coned "to fit in fluid tight relationship," cannot reasonably be said to cover the feature of wedging the "nose" into the groove by leaving a little space between all the surface that is at right angles to the axis. However that may be, we do not think that such an idea, even if properly claimed, is patentable, in view of the prior art.

We therefore turn to a consideration of the prior art to determine that question. Appellees contend that the claims in issue were anticipated by the prior art. In so far as said claims of the patent in suit depend upon the idea of the tapered or conical pin of the primary collar threading into the box of the secondary collar, it was anticipated by patent No. 964,353 issued to M. H. Whittier on July 12, 1910, for a rotary well boring box and pin, which contains the following claim: "I claim: A rotary well-boring box and pin comprising the combination with sections of pipe having externally screw-threaded ends, of boxes tightly screw-seated upon the ends of the pipe, those on one end having tapered internally coarsely screw-threaded sockets and longitudinal perforations, and those on the opposite ends having tapered externally coarsely screw-threaded pins and longitudinal perforations; so that the sections of pipe may be screwed together to form a hollow stem of the desired length by screwing the pins into the sockets, and so that the lengths of pipe may be connected and disconnected by operating the pins in the sockets thereby saving the threads of the pipe-sections from wear."

Appellant's claims based upon a lip formed on the outer edge of the primary collar and inclosing a groove, the interior surface of said lip being beveled or conical, and the projecting portion of the secondary collar fitting inside said lip, said projecting portion being also coned to fit in fluid tight relationship, were anticipated by patent No. 47,554 issued to R. H. Lecky on May 2, 1865, and patent No. 646,597 issued to Bullock on April 3, 1900. In each of these patents for joints in drill stems there is a disclosure of the idea of the beveled nose of the secondary part of the joint fitting inside the beveled lip of the primary part forced together by means of screw threads. The testimony in the record is to the effect that the function of the complementary beveled nose and lip is to prevent the secondary part from spreading and the joint becoming loosened when the joint is in use. Whether or not they would fit in fluid tight relationship would somewhat depend on the degree of precision with which the parts were machined. The evidence also shows that the combination of the tapered pin and the beveled lip or annular groove has no new functional relationship. This being so, merely combining the tapered pin and the beveled or conical lip in one device would not constitute invention and therefore would not be patentable. It is well settled that where two old devices are combined, something new and useful in the combination must be found to make the patent valid. Ray v. Bunting Iron Works (C. C. A. 9) 4 F.(2d) 214, and cases there cited; Thomas Day Co. v. Doble Laboratories (C. C. A. 9) 42 F.(2d) 6; Knowles v. 138 West Forty-Second Street Corp. (C. C. A. 2) 43 F.(2d) 929; Everlasting Furniture Brace Co. v. Wittliff (C. C. A. 7) 44 F.(2d) 129. Thus the lower court correctly decided that as to these elements of the patent in suit there was no invention.

The claim of infringement is based upon the proposition that the width of the flattened end of the nose of appellees' device is 3/32″ while the width of the base of the groove into which it fits is 1/16″ (2/32), as shown by the following drawings made by appellees as guides in manufacturing their device, as well as the testimony in the record, thus providing for a wedging effect when the joint is tightened. It is also contended by appellant that the altitude of the frustum of the cone in the pin in appellees' device is slightly less than the socket or groove, thus leaving a little space and giving an opportunity for said wedging effect, which appellant claims is covered by his patent. We think it is clear that appellant's device in this regard is the result of mere mechanical skill and does not involve invention. It requires no inventive ingenuity for one skilled in the art to hit upon the idea of wedging the projection into the groove formed by the lip, or to allow a space therefor, in order to remove a part of the strain from the threads and better insure a fluid-tight joint, if a fluid-tight joint was found to be desirable.

In the case of Burt v. Alexander F. Evory, 133 U. S. 349, 358, 10 S. Ct. 394, 397, 33 L. Ed. 647, the court said:

"It is well settled that not every improvement in an article is patentable. The test is that the improvement must be the product of an original conception, (Pearce v. Mulford, 102 U. S. 112, 118 [26 L. Ed. 93]; Slawson v. Grand Street Railroad, 107 U. S. 649, 2 S. Ct. 663 [27 L. Ed. 576]; Munson v. New York City, 124 U. S. 601, 8 S. Ct. 622 [31 L. Ed. 586], and many other cases;) and a mere carrying forward or more extended application of an original idea—a mere improvement in degree—is not invention. In Smith v. Nichols, 21 Wall. 112, 118, 119 [22 L. Ed. 566], Mr. Justice Swayne, delivering the opinion of the court, said: 'A patentable invention is a mental result. It must be new, and shown to be of practical utility. Everything within the domain of the conception

belongs to him who conceived it. The machine, process, or product is but its material reflex and embodiment. A new idea may be ingrafted upon an old invention, be distinct from the conception which preceded it, and be an improvement. In such case it is patentable. The prior patentee cannot use it without the consent of the improver, and the latter cannot use the original invention without the consent of the former. But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way, by substantially the same means, with better results, is not such invention as will sustain a patent. These rules apply alike, whether what preceded was covered by a patent or rested only in public knowledge and use. In neither case can there be an invasion of such domain, and an appropriation of anything found there. In one case everything belongs to the prior patentee; in the other, to the public at large.'

"Neither is it invention to combine old devices into a new article without producing any new mode of operation. Stimpson v. Woodman, 10 Wall. 117 [19 L. Ed. 866]; Heald v. Rice, 104 U. S. 737 [26 L. Ed. 910]; Hall v. Macneale, 107 U. S. 90, 2 S. Ct. 73 [27 L. Ed. 367]."

In the case of Klein v. City of Seattle, 77 F. 200, 204, this court said:

"A patent must combine utility, novelty, and invention. It may, in fact, embrace utility and novelty in a high degree, and still be only the result of mechanical skill, as distinguished from invention. A person, to be entitled to a patent, must have invented or discovered some new and useful art, machine, manufacture, or composition of matter, or some new and useful improvement thereof. In the language of the supreme court: 'It is not enough that a thing shall be new, in the sense that, in the shape or form in which it is produced, it shall not have been before known, and that it shall be useful, but it must, under the constitution and statute, amount to an invention or discovery.' Hill v. Wooster, 132 U. S. 693, 701, 10 S. Ct. 228, 231 [33 L. Ed. 502], and authorities there cited.

"A mere difference or change in the mechanical construction in the size or form of the thing used, in order to obviate known defects existing in the previous devices, although such changes are highly advantageous, and far better and more efficacious and convenient, does not make the improved device

patentable. In order to be patentable, it must embody some new idea or principle not before known. It must, as before stated, be a discovery, as distinguished from mere mechanical skill or knowledge. Atlantic Works v. Brady, 107 U. S. 192, 200, 2 S. Ct. 225 [27 L. Ed. 438]; Hollister v. Benedict, 113 U. S. 59, 5 S. Ct. 717 [28 L. Ed. 901]; Thompson v. Boisselier, 114 U. S. 2, 11, 5 S. Ct. 1042 [29 L. Ed. 76]; Busell Trimmer Co. v. Stevens, 137 U. S. 423, 433, 11 S. Ct. 150 [34 L. Ed. 719]; Andrews v. Thum, 15 C. C. A. 67, 67 F. 911."

The principles stated in these decisions are well settled and require no further discussion. It seems clear that what appellant has done in providing for the "little spaces" and the wedging action does not constitute invention and is, therefore, not patentable.

Decree affirmed.