**SHERMAN et al. v. UNITED AUTOGRAPH-IC REGISTER CO.**

**No. 8160.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 21, 1943.

Marston Allen, Theodore Greve, and Allen & Allen, all of Cincinnati, Ohio, and Clarence F. Poole, of Chicago, Ill., for appellants.

Bernard A. Schroeder, George A. Chritton, Wm. B. Davies, and Chritton, Wiles, Davies, Schroeder & Merriam, all of Chicago, Ill., for appellee.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal by plaintiffs from an adverse decree in a suit charging defendant with infringement of Patents No. 2,095,292, No. 2,067,210 and Reissue No. 20,452. Defendant by its answer alleged invalidity, non-infringement and certain other defenses not here material. In this court, plaintiffs have withdrawn their attack upon the lower court's decree insofar as it pertains to the first-named patent and it, therefore, is no longer at issue.

Patent No. 2,067,210 was applied for April 29, 1932 by plaintiff's deceased predecessor and issued January 12, 1937. It is entitled an "Attachment for Writing Machines," and relates to the mechanism for feeding recording material into a typewriter and other recording machines. Prior to this alleged invention, it appears that there were two means generally recognized and practiced for feeding material into such machines: (1) The frictional method, such as is found in the ordinary typewriter, by which the paper is pressed against a rotary platen roll by friction rollers which are moved into or out of engagement with the platen roll as may be desired by means of a finger lever; and (2) the pin feed method, consisting of rotating wheels with pins arranged so as to engage holes previously made near the two marginal edges of the paper. This latter method appears to have been largely employed where it was desirable to use multiple sheets of paper, as in copying, so as to retain the various sheets in proper registry or alignment. There is no occasion to cite or discuss the numerous prior art disclosures pertaining to these two methods of feeding for the reason that they are both admittedly old in the art. The invention now claimed resides solely in the mechanism by which the two methods of feeding may be employed alternatively and by which such mechanism when employed as to one method will not be interfered with by the mechanism designed for use in the other.

The court below first held the instant patent valid and infringed. Upon rehearing, the court reached a contrary conclusion, holding the patent invalid. The invalidity thus determined was predicated upon a finding that the patent in suit was anticipated by Krauth Patent No. 1,189,263, issued July 4, 1916, which was not originally considered by the court.

The patent contains 48 claims, but only claim 48 was declared upon in this suit. It is as follows: "48. In a writing machine, the combination of a platen with alternatively selective feeding mechanism for advancing the record material relative to the platen, including travelling pin type feeding means engageable in longitudinally spaced holes in the record material for advancing the record material past a writing position, a support upon which the pin

type feeding means is laterally adjustable to accommodate different record material, and a frictional feeding means for advancing record material relative to the platen during nonoperative periods of the pin type feeding means."

As pointed out by plaintiffs, the disclosure of Krauth had to do with an autographic register, while the patent in suit relates largely to typewriters, but we are of the view that this distinction is insignificant in deciding whether Sherman was anticipated by Krauth. In fact, Krauth points out that his invention relates to control of other propelling and feeding devices, just as Sherman discloses that his invention is applicable to paper feeding devices and manifolding machines. The means of alternative feeding claimed by Sherman would not constitute invention if it was disclosed by Krauth.

It is interesting to note, even though of no great importance, plaintiffs' assertion that Krauth's patent was merely a paper one and the same assertion by defendant as to the patent in suit. So far as we can determine from the record, the assertion as to Krauth is well founded, and with somewhat less certainty the assertion as to the instant patent is perhaps correct. At any rate, it appears quite doubtful if plaintiffs' commercial structure is in accordance with the principle enunciated by the patent in suit. One notable variance lies in the fact that the patentee evidently had in mind a stationary platen bar rather than a rotating platen as is commonly, if not universally, employed in connection with a frictional drive. The patent states: "A further object of the invention is to dispense with the usual rotary platen and provide, in lieu thereof, a stationary platen bar which will afford a stationary solid surface against which the type bars impinge at the writing position." Furthermore, in many—in fact, in most—of the claims other than the one involved in the instant case, a stationary bar is designated. As will be noted, claim 48 in suit merely mentions a platen without stating whether it is to be stationary or rotary. Plaintiffs' commercial device is sold under the trade name "Registrator Platen" and includes a rotary platen. The parties in their briefs have much to say concerning this rotary platen feature. As we view the situation, however, it is of little, if any, consequence as bearing upon the contention that Sherman was anticipated by Krauth. It would appear to be of more importance on the matter of defendant's infringement, with which we are not immediately concerned.

There seems to be no contention but that the claim in suit calls for an alternative means of feeding. It is difficult to conceive, however, how the result sought could be achieved except by the employment of a rotary platen, which the claim does not specifically call for. Assuming, however, that the language employed in connection with the drawings and specification was sufficient to include a rotary platen, we agree with the lower court that the claim is anticipated by Krauth.

Krauth discloses a mechanism by which pins engage and advance marginally punched stationary in substantially the same way as is disclosed by the pins of the patent in suit. This disclosure is not detracted from by the fact that he also shows sharpened pins designed for the feeding of unpunched paper. Means are disclosed similar to that by Sherman by which the pins may be retracted. Krauth also shows auxiliary friction rolls which may be employed as a means of feeding when the pins are in retracted position. Plaintiffs' main contention, to escape anticipation by Krauth, is that the rolls disclosed by the latter were not intended as a friction method and are insufficient in this respect. This contention appears to be unsound, in view of Krauth's specification, which states: "The rolls 10, 10' respectively, frictionally engage the peripheries of the punch carriers 6, 7 and each project through apertures in cross bar 53 fixed to and spanning the side frames slightly above the writing table. The paper passes between the said rolls and punch carriers, and gripped thereby, advancing the paper with their rotation."

While we are convinced that Krauth was primarily concerned with a pin feeding mechanism, we think it is equally certain that he discloses a frictional mechanism which could be employed at the discretion of the operator. The fact that this latter method might have been incidental and of secondary importance to the main objective does not impair the conclusion that his disclosure is anticipatory. Furthermore, we are of the view that the alternative feeding mechanism of Sherman now so heavily relied upon by plaintiffs was, as in Krauth, rather incidental to the main objective, which was primarily a pin feeding device. This view is strengthened by the fact that

no mention is made of an alternative feeding means in any of the 47 claims not in suit. It was only after these 47 claims were allowed, and subsequent to an inspection of defendant's devices by a representative of plaintiffs, that claim 48 was inserted. In fact, defendant contends that the claim is invalid for this reason and cites numerous authorities in support thereof. Inasmuch as we agree with the District Court that the claim is anticipated by Krauth, we need not decide whether the circumstances attendant upon its insertion bring it within the scope of the authorities upon which defendant relies. We do think, however, that the long delayed insertion of this claim, wherein the alternative means was first described, lends support to our view that this means was incidental to the primary objective, as it was in Krauth.

Reissue Patent No. 20,452 was also issued to plaintiffs' deceased predecessor July 20, 1937, upon an application for reissue made December 18, 1936. It is entitled "Manifolding Paper" and has to do with holes punched in the record and transfer material, at or near the margin thereof, for the purpose of receiving the pins of a pin feeding device such as is shown in the patent heretofore discussed. Holes punched for such purpose were old in the art, just as was the pin feeding device. Obviously, a pin feeding means would be useless in the absence of holes in the material for the purpose of receiving such pins, just as the hole-punctured material would be useless in the absence of the pins.

Claims 1, 2 and 3 in suit relate to recording material where more than one sheet is used—in other words, where the record upon the second and subsequent sheets is made from carbon paper. Without setting forth the claims, it is sufficient to state that they are directed solely at holes in the carbon sheet larger than those in the recording sheets. In other words, the patent is on a simple round hole in a piece of carbon paper.

Plaintiffs in their brief state: "The problem presented was the successful feeding of three manifolded sheets of paper, the second or interleaved sheet being flimsy and having a sticky surface. This was accomplished by making the feed holes in this interleaved sheet larger than the holes in the first and third sheet." Also, in discussing the claimed invention, plaintiffs state: "While it is, of course, old to make a hole larger than the pin over which it is to go, that is not what we are faced with here. The material to be fed with which this patent deals consists of at least three sheets, the first or ribbon sheet, the next sheet of flimsy carbon paper, and the third sheet which receives the impression from the carbon sheet. In accordance with the patent, the first and third sheet has relatively small holes, while the interlying carbon sheet has relatively large holes."

This alleged invention is so simple and commonplace, and in our judgment so devoid of merit, that we are apprehensive lest we fail to grasp the importance claimed for it. We are able to visualize the problem, but we are unable to comprehend how its solution could have amounted to invention. Obviously, it was important that the holes in the manifold sheets, including the carbon sheet, be in proper alignment so that they might accurately receive the pins of the feeding device. It is argued, perhaps correctly, that the carbon sheet because of the character of its material had a tendency to contract or in some instances expand, and for this reason the hole in this sheet became out of alignment with the holes in the other sheets. In other words, when the pin made its entrance into the holes of the other sheets, it would only hit the edge of the hole in the carbon sheet or perhaps miss it entirely. We should think that any person, skilled or unskilled, observing this feeding process in operation and noting that the hole in the carbon was out of alignment, would immediately realize either that the position of the hole in the carbon must be changed or enlarged so that the portion of the hole necessary to accommodate the pin would be in alignment. This evidently was the sum total of the patentee's discovery.

We think there is no occasion to discuss the prior art. Either with or without such art, we think the patent is invalid for want of invention, and so hold.

The decree of the District Court is affirmed.