**AUTOGRAPHIC REGISTER CO. v. UARCO, INC.**

No. 10006.

United States Court of Appeals
Seventh Circuit.

May 25, 1950.

Rehearing Denied June 29, 1950.

Casper W. Ooms, Chicago, Ill., Thomas J. Byrne, New York City, Will Freeman, Paul H. Gallagher, Chicago, Ill., for appellant.

Bernard A. Schroeder, Bradford Wiles James C. Wood, Chicago, Ill., Schroeder, Merriam, Hofgren & Brady, Chicago, Ill., of counsel, for appellee.

Before MAJOR, Chief Judge, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff charged defendant with infringement of its patents, Brenn 2,082,730, Johnson 2,258,573, Brenn 2,212,174 and Brenn 2,159,500. The District Court held each invalid and entered judgment dismissing the complaint. Plaintiff appeals from so much of the judgment as declared invalid the first three patents.

With the arrival of the typewriter and related office machines, business practices in correspondence and recording took on new aspects. The old custom of making copies of written documents by hand or by letter-press was laid aside. In lieu thereof, business offices, in making invoices and similar records, adopted the use of sheets bearing printed headings and as much other common information as possible, in order to reduce the amount of writing to a minimum; and to make copies, assembled the sheets with carbon sheets interleaved and inserted in the typewriter, one set at a time. After typing had been completed, the typist removed the entire set and separated the written sheets from the carbons. From the use of a single set of sheets and carbons, the practice soon developed of employing long continuous printed forms containing the sets in series, with original and carbon

sheets in superposed relation to each other, each set being separated from the one following by a horizontal weakened line. The strip, containing the attached sets capable of being separated at the weakened lines, folded on these lines in a convenient stack in "zigzag" arrangement.

The continuous carbon interleaved stationery of the patents in suit and of the art in general is used in tabulating machines, telegraphic typewriters and bookkeeping machines, as well as in ordinary typewriters for writing bills, orders and other records where manifold copies are desired. As noted, the sets of forms appear in series; the blank record sheets are interleaved with continuous carbon sheet strips, and, in view of the zigzag arrangement, the leading end may be introduced into the machine. After one set of the forms has been filled out, the entire written set is detached from the continuous strip on the weakened line and the carbon sheets separated from the record sheets, the latter being distributed as desired.

It is obvious that, in order to maintain the superposed forms in exact registration or alignment, as they pass through machines, some means must be provided to that end. This brings us to the first patent in suit, the Brenn "staple," 2,082,730, which is concerned with the special problem of maintaining the separate sheets of the continuous strip in registration with each other. Some 12 claims are involved.[1] The application was filed September 26, 1927; the patent issued June 1, 1937. Brenn pointed out that it was his object to provide a manifolding pack so improved that the special written work sheets were held in "accurate registration with each other" and the carbon or transfer strips in fixed operative position between the worksheets. He proposed a means for holding the strips in registration, so placed and so operative that severing one set of written forms from the strip automatically renders the holding means inoperative. To accomplish this, he placed staples on the lines of severance, paralleling those lines, between the respective sets of forms of the manifolding stationery, asserting that when one set of sheets is separated at the weakened line, the staple, which has previously served the purpose of keeping the sheets in alignment, is automatically discharged and discarded. In other words, plaintiff, while admitting that all other elements of Brenn's combination were old, asserts that by his prescription of staples on the weakened lines, he achieves perfect alignment of the worksheets and carbon sheets until they have been filled in and that, when the set of sheets is torn from the strip on the severance line, the staple is automatically discharged. Plaintiff, though frankly confessing that the improvement is simple, insists that it reflects patentable invention and that the court below erred in not so finding.

This art of manifolding stationery provided for typing machines, including the specific methods of arrangement of the patent, seems to have been voluminous and one might easily form the impression, from an examination of the numerous patents issued, that each little variation from the prior art in each patentee's combination brought about, in the judgment of the Patent Office, patentable invention. It is in this crowded art that Brenn conceived the idea of using an automatically discardable staple to preserve alignment or registration of the respective sheets one with another. That he had some difficulty in persuading the Patent Office to grant the patent is apparent from the lapse of time between application and issuance,—some ten years. He had made an earlier attempt to solve the problem by placing gum along the lateral edges of the pile of continuous record strips and carbon strips, but this was

1. A typical claim is Claim 3 as follows: A manifolding pack comprising a plurality of superposed continuous worksheet strips each comprising a succession of superposed printed forms separated by a line of severance; and means located at intervals along said strips for securing said strips together in registration, said means being located on said line of severance between two adjacent forms so as to be rendered inoperative to hold the forms together when the strips are severed in form lengths along said line of severance.

not entirely satisfactory. So, eventually, he hit upon the idea of utilizing staples.

Carter, in patent 627,481, in a manifold sales book, prescribed that the sheets should be perforated across their middle and that wire staples would pass through the perforations on the line weakened by those perforations. Bovier, in 1,293,011, in a manifolding book, likewise required staples along the perforated or weakened line. Beale, in 1,733,048, in his book containing removable blank leaves, contemplated removal of the pages by severing them along a perforated or weakened line and prescribed suitable staples to "detachably secure the sheets to the cover." Some of his claims specify a "U-shaped staple" detachably connecting the sheets at the weakened lines and others, instead of staples, prescribe "detachable fastenings" securing the sheets on the weakened lines. Hicks, in 425,033, in providing a bundle of wrapping or other paper in one continuous sheet, specified that the sheets should be perforated or weakened at regular intervals so as to be torn easily at stated intervals. He, too, supplies staples along the severance line making the sheets easily detachable. Phillips, in 1,975,660, shows detachable adhesive at the line of weakening. Carr, in 215,094, shows stitching on the line of weakening. In other words, instead of staples he prescribed a series of stitches on the weakened line.

■ Not all of this prior art relates to the teaching of Brenn and other workers in the specific art with which they were concerned; and it may well be that the staples provided by various other inventors, though placed on the weakened line, were not provided for the express purpose or to supply the specific efficiency that Brenn had in mind. However, in view of Mandel Bros. Inc. v. Wallace, 335 U.S. 291, 69 S.Ct. 73 and Sales Affiliates, Inc. v. Natl. Mineral Co., 7 Cir., 172 F.2d 608, we think Brenn was charged with notice of all he might learn from this earlier art. In other words, when Brenn saw the prior patents, he learned that it was feasible in the paper and stationery arts to place the staples on the line of perforation, that is to say, on the weakened line, between the sets of

sheets. He might have used sewing stitches instead of staples but they would not have been so useful or efficient. He had tried gum, but that slowed up the operations of the typist. Instead, he took the staples from the old art and placed them on the weakened line and thus got his combination. Without considering further the history of his application and the difficulties encountered in the Patent Office, we think from the evidence submitted, that the District Court was justified in finding that Brenn, though undoubtedly making some advancement, did no more than might be expected of one skilled in his calling.

■ In Johnson, 2,258,573, the patentee was dealing with relative facility or ease in separating the record sheets from the carbon sheets after the former have been written on as desired. When the worksheets and the carbon sheets are removed from the typing machine in completed form, it becomes necessary, obviously, for the typist to separate the worksheets and the carbon sheets. If all the sheets are of the same size, both horizontally and vertically, obviously each sheet can be separated from the others and picked up only with some difficulty and consumption of time. Separation of the carbons and records is performed by taking from the completed set, first, a record sheet, then a carbon sheet, then the next record sheet and so on to the last sheet. Of course, all this is time-consuming. Johnson worked upon the problem and in his application claimed to have solved it by so arranging and locating the carbon sheets in the strips with relation to the record sheets that, when a set of the record sheets and carbon sheets is severed from the continuous strip, portions of the carbon sheets extend at one place beyond the straight edge portions of the superposed record sheets, while other marginal portions of the carbon sheets are inwardly displaced with relation to the corresponding marginal portions of the record sheets. These projections are described as tabs which the typist can grasp, thus facilitating the separation of worksheets and carbon sheets. It is upon his placement of this element in an old combination that plaintiff grounds its claim of invention upon the part of Johnson.

The filewrapper of Johnson's patent discloses that it was old on the part of a typist to insert four or five blank sheets of paper in the typewriter with carbon sheets offset so as to leave an open space near the top of the sheet with the carbon sheets sticking out beyond the bottom or the top of the record sheets. Mallin, 1,032,918, showed letter-size carbon sheets with a tab at one end and a notch at the other. Bottle, 1,736,427, August 14, 1926, disclosed continuous record and carbon strips provided with notches to facilitate separation. Johnson was aware of this application and says that his study of it led him to his solution by the use of tabs instead of notches. Hopkins, 1,054,-691, provided a carrier strip for a film pack having curved slits at the end of each sheet, so that, when torn along the indicated transverse line, a tab would be left projecting as the result of a notch formed by slits in the preceding length. Escamilla, 1,596,519 and Reid, 1,757,876, show carbon sheets with notches at one corner and tabs at the opposite corner. Davidson, 724,995, prescribed slits or cuts intersecting the line of perforations, so that when the form is torn off, a notch will be formed and a tab will remain. Shoup, 600,094, disclosed inclined cuts. Greig, 2,066,346, mentioned various structures. His Figure 2 discloses that the record forms may be left rectangular by merely tearing them straight across the line of severance. It is suggested that the record forms may be torn diagonally on another line, leaving their corners attached to the carbon sheets. If the stationery shown in Figure 5 is separated by tearing the record form straight across the horizontal line and the carbons along the same line to the intersection of a diagonal line, then along the latter line, a projecting carbon tab will be left at one end and a finger grip notch provided at the opposite end, apparently as claimed by Johnson. Greig antedates Johnson by some two years. True, Greig amended his application, but his art, we think, was fully disclosed in his original application. These and various other prior patents in evidence, were supplemented by parol testimony of witnesses in open court.

Johnson's contribution lay in the prescription of tabs to facilitate separation of worksheets and carbon sheets. Bottle had suggested cutting off the corners on opposite sides. Other delvers in the art had suggested various other means to facilitate ease of separation. With this evidence before it, supplemented by the testimony of witnesses, the District Court found that Johnson had not achieved invention. We think the record is such that we are without right to set aside this finding. Rather, we agree that Johnson, working in a crowded art, merely adopted the expedient of one skilled in the calling of assembling and disassembling multiple sheets consisting of work sheets and carbon sheets. One typist might extend the ends of the carbon sheets beyond the work sheets and, when the work has been completed, pull them out. Another might adopt Bottle's idea of cutting off the corners so as to facilitate speed of separation. Others might use the tabs prescribed by Johnson. We think that the adoption of any one of these methods was the choice of the worker and did not rise to the dignity of patentable invention.

There remains Brenn's patent 2,-212,174. The applicant showed the old continuous manifold stationery strip with interleaved carbon sheets. Brenn added a detachable feeding band along one marginal edge, so that the stationery will be fed by a single pin-wheel located at the left end of the platen of the typewriter. Phillips and Allen, 2,306,900 also used continuous record strips interleaved with carbon strips provided with weakened transverse lines secured to a carrier belt by stitching, which is rendered ineffective when the strips are separated into sets. The feeding bands are detachable along the line of weakening. Brenn lost an interference to Phillips and Allen. Phillips, et al., 2,149,544, likewise disclosed continuous form stationery with interleaved carbon sheets, the record strips being held together by detachable binding strips. Brown, 1,738,633, also showed continuous form stationery strips attached at one edge by a detachable binding strip. True it is that Claim 2 of Brenn specifies that the carbon strips are not perforated and remain attached to the feeding bands and that Claim 5 further specifies that the carbon strips be narrower than the record

strips, in order to provide a finger grip. We think this is merely a mechanic's choice. However, it was disclosed by Stevens, 2,-120,161, to whom Brenn lost an interference. Brandt, 764,173 and McDonald, 466,-507, likewise, suggest finger grip areas.

As to this third patent, also, we conclude that the applicant, working in a crowded field, made a useful suggestion but that it was only such as would occur to any typist who took time to think about the problem encountered. At any rate, the evidence is such, consisting not only of documentary evidence but also of parol testimony, that we conclude that we would be wholly unjustified in setting aside the finding of invalidity.

After consideration of the entire record, we are of the opinion that all three of these patents reflect not patentable invention but merely the exercise of the skill of the calling and an advancement plainly in accord with the prior art, within the decision of the Supreme Court in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 39, 86 L.Ed. 58, where the court said: "For it is our opinion that the Mead device was not the result of invention but a 'mere exercise of the skill of the calling', an advance 'plainly indicated by the prior art'. * * * More must be done than to utilize the skill of the art in bringing old tools into new combinations. * * * We may concede that the functions performed by Mead's combination were new and useful. But that does not necessarily make the device patentable. Under the statute, 35 U.S.C. § 31, 35 U.S.C.A. § 31, R.S. § 4886, the device must not only be 'new and useful', it must also be an 'invention' or 'discovery'. Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 1047, 29 L.Ed. 76 [79]. Since Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683 [691], decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. Hicks v. Kelsey, 18 Wall. 670, 21 L.Ed. 852; Slawson v. Grand Street, P. R. & F. R. Co., 107 U.S. 649, 17 Otto 649, 2 S.Ct. 663, 27 L.Ed. 576; Phillips v. Detroit, 111 U.S. 604, 4 S.Ct. 580, 28 L.Ed. 532; Morris v. Mcmillin, 112 U.S. 244, 5 S.Ct. 218, 28 L.Ed. 702; Saranac Automatic Mach. Corp. v. Wirebounds Patents Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634; Honolulu Oil Corp. v. Halliburton, 306 U.S. 550, 59 S.Ct. 662, 83 L.Ed. 980. 'Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable.' Reckendorfer v. Faber, 92 U.S. 347, 2 Otto 347, 356, 357, 23 L.Ed. 719 [723, 724]."

We think, too, that the patents are within the scope of our decision in Sherman v. United Autographic Register Co., 7 Cir., 139 F.2d 185, 187: "We should think that any person, skilled or unskilled, observing this feeding process in operation and noting that the hole in the carbon was out of alignment, would immediately realize either that the position of the hole in the carbon must be changed or enlarged so that the portion of the hole necessary to accommodate the pin would be in alignment. This evidently was the sum total of the patentee's discovery."

Inasmuch as the judgment declaring each of the three patents in suit invalid must be affirmed, there is no occasion for us to consider other grounds announced by the District Court for its decision and urged here in support of affirmance.

The judgment finding the three patents invalid for want of patentable invention and dismissing the complaint is affirmed.