**HAMILTON MFG. CO. v. ILLINOIS SURGICAL SUPPLY CO.**

No. 10435.

United States Court of Appeals Seventh Circuit.

Jan. 28, 1952.

A. Trevor Jones, Howard H. Darbo, Jones, Tesch & Darbo, Chicago, Ill., for appellant.

John B. Stephan, Chicago, Ill., Bernard F. Garvey, Washington, D.C., for appellee.

Before MAJOR, Chief Judge, and DUFFY and FINNEGAN, Circuit Judges.

MAJOR, Chief Judge.

This appeal is from a judgment entered February 21, 1951, adjudging invalid claims 2 and 4 of United States Letters Patent No. 2,267,973, issued to Andrew Demcak December 30, 1941, on an examining table for the use of physicians and surgeons.

The action was commenced by plaintiff as owner of the patent by assignment from Demcak and charged infringement by the defendant, Illinois Surgical Supply Company. This defendant admitted sale of the alleged infringing tables which were manufactured and sold to it by the other defend-

ant, Brooklyn Hospital Equipment Co., Inc. A third party complaint was filed against the latter company, which answered admitting the manufacture and sale of such tables. Subsequently, plaintiff filed a complaint charging infringement by Brooklyn Hospital Equipment Co., Inc., which became the principal defendant in the case.

The defendants contend that the patent in suit is invalid on two grounds, (1) that the claims are directed to subject matter which formed no part of the application as filed and therefore do not come within the inventor's concept as disclosed, and (2) that the patent is invalid as lacking in patentable invention in view of the prior art. It is evident that the decision of the District Court, 97 F.Supp. 235, rests upon the second ground. In this connection the court found, "This is a combination patent. No new element is involved. Plaintiff relies solely on the new combination of old elements. But in the combination these elements neither perform nor produce any new or different function (than) that theretofore performed or produced (by) them." The court made no decision on the defense of non-infringement or the further defense that the plaintiff was not entitled to prevail because of laches in the bringing of its suit.

Inasmuch as we agree with the District Court that the claims in suit are invalid for lack of patentable invention, we think, as that court evidently thought, that there is no occasion to decide or discuss other issues. The principal objects of the invention as stated in the patent are: "Among other objects the invention aims to provide an improved and simplified structure of this type (examining table). One aspect of the invention contemplates the mounting of a paper supply roll on the under side of the padded adjustable rest member of the table, carried directly by the rest member, so that a web of constantly fresh paper or the like may be drawn over the rest member for sanitary purposes in any adjusted position of the rest member, while at the same time a portion of the weight of such member is counterbalanced so as to facilitate ready and easy adjustment thereof."

The table disclosed (description as given by one of plaintiff's witnesses) is a cabinet type with an upholstered top consisting of two parts mounted on a base. The two parts are connected by a hinge; the lower section is permanently attached to the table and the upper section (called the back rest section) pivoted on the hinge so that it may be adjusted upward or downward, away from or toward the base of the table. On the upper or back rest section is a raised portion which forms a built-in pillow on which the patient can rest his head. Underneath this head rest section is a cavity or space designed to contain the supporting mechanism for a bar holding a paper roll. This bar is removable so that a new roll of paper may be inserted as needed. For the purpose of holding the head rest member at any desired elevated position, a friction clamping means is provided, operable in connection with a perpendicular rod. Part of the weight of the rest member when in elevated position is borne by this clamp and rod, and a portion by the hinge member which connects the two portions of the table. There is also disclosed a spring-like arrangement, one end of which is attached near or at the base of the table and the other end to the rest member near the point of the hinge connecting the two members of the table. This feature is sometimes referred to as a counterbalancing device and aids in the elevation of the rest member.

Physicans' examining tables had long been in use prior to the invention in suit. They had been manufactured by plaintiff, the defendant Brooklyn Hospital Equipment Co., Inc., and others. Plaintiff's activities in this respect are aptly disclosed by its witnesses. For instance, in its catalog of 1930, there was shown an examining table with a flat upper surface or back support and an ordinary pillow as an accessory to the table. The top of the table was divided into two sections, one stationary and the other, the rest section, movable and adjustable. It showed no head rest member other than the pillow. For sanitary and other purposes a bed sheet was spread over the table in preparation for the patient's examination. The changing of

the sheet for each examination was troublesome and expensive. As an improvement, plaintiff devised a paper roll attachment mounted on the outside of the head end of the rest member. This attachment afforded the means by which paper could be unrolled to the desired length, spread over the table and detached from the roll. Thus, the sheet previously employed was replaced by the paper. This roll of paper attached to the outside of the head rest member was inconvenient and, more important, being exposed to view had a poor psychological effect upon a patient.

The disclosure of the patent in suit was shown by plaintiff's 1937 catalog. A plaintiff witness when asked to describe the advantages of the new structure stated: "The mechanical gadget, the paper roll on the end, was hidden. It was psychologically correct. And after the patient was in the office the paper could be pulled down over the surface and the idea of sanitation preserved in the patient's mind. It kept the design of the furniture itself as such as near as is possible hiding that from view. It was in that respect entirely new and novel, and another step in the right direction."

It is also significant to note that this witness gave to the tables manufactured in accordance with the Demcak invention the name "Hide-A-Roll," and plaintiff's table has since been manufactured and sold under that trade name.

The file wrapper history discloses that the course pursued by the patentee in the Patent Office was arduous and extended. The application was filed August 28, 1937, and claims 15 and 16 (claims 4 and 2, respectively, in suit) were allowed June 12, 1941. No good purpose could be served in reviewing this file wrapper history in detail. A study excites our curiosity as to the basis upon which the Examiner allowed the claims in suit in view of those which had been previously rejected. Plaintiff suggests that the thorough consideration which the patent received at the hands of the Examiner enhances the presumption of validity, but a reading of this history leaves us with the impression that it might be more aptly characterized as a reward by the Examiner for the persistency displayed by the patentee. With the original application five claims were filed, all of which were rejected January 5, 1938, over certain prior art patents named by the Examiner. These claims were cancelled by Demcak and claims 8 and 9 inserted. These claims were likewise rejected in view of the prior art which the Examiner had previously cited, and in such rejection the Examiner stated: "Applicant's argument has been carefully considered but is deemed unpersuasive of patentability since the addition of a paper supply roll to a table section is believed to involve only ordinary choice and not invention."

Thereupon, Demcak amended his specifications on April 17, 1939, by inserting: "So constructed and arranged, the rest member with its combination paper supply roll chamber and head rest is at all times wholly within the vertical projection of the base or support 10, and both the paper supply roll and the spring for counterbalancing the rest member are normally concealed from view within the rest member and the cabinet support respectively." Thus, for the first time the patentee inserted the suggestion that the head rest member "is at all times wholly within the vertical projection of the base or support," and that "both the paper supply roll and the spring for counterbalancing the rest member are normally concealed from view within the rest member and the cabinet support respectively."

Claims 10, 11 and 12 were then filed, each of which included in somewhat different phraseology the suggestions contained in the amended specifications, and particularly the element that the head rest member be "disposed at all times within the vertical projection of the support or base." Claims 10, 11 and 12 were allowed April 21, 1939. Claims 10 and 12 are claims 1 and 3 of the patent as issued (these claims not relied on in the instant case). On April 19, 1940, Demcak filed claim 13, which was rejected by the Examiner over prior art patents previously cited by the Examiner, including patent No. 1,967,422, issued to S. Nadelson July 24, 1934. It is interesting to note that claim 13 failed, as had pre-

vious claims rejected by the Examiner, to provide that the rest member should be "at all times wholly within the vertical projection of the base or support," and also it failed to include a spring means for counterbalancing the rest member. Claim 13 was amended to include this latter feature and again rejected.

Claim 14, filed at the same time as claim 13, was also rejected. Thereupon, the patentee, on May 31, 1941, again amended the specification, the material portion of which provides: "The paper supply roll mounting means advantageously moves with the rest member 12 in the movement of the latter toward and away from the base or support 10." At the time of this amendment Demcak cancelled claims 13 and 14 and filed claim 15 (claim 4 in suit), which was allowed June 12, 1941. On September 3, 1941, he cancelled claim 11 and inserted claim 16 (claim 2 in suit), which was allowed September 9, 1941.

We think claim 4 is typical, at least it is illustrative of the claims in suit. It states: "In a physician's examining table or the like, the combination with a table base, of a rest member for receiving a patient reclining thereon, said rest member being mounted on the base *within the vertical projection of the base* and normally forming a top for said base, said rest member having tapering side walls substantially vertically aligned with the side walls of the base and having a hollow upwardly enlarged portion at its outer end providing both a chamber on the under side thereof and an elevated head rest on the upper side thereof merging gradually into the main body of said rest member, a paper supply roll mounting means entirely housed within said chamber whereby said chamber is closed by said base when the rest member is lying therealong as a top for the base and a paper supply roll carried on said mounting means *is concealed*, said rest member being pivotally mounted at its end opposite said head rest for movement toward and away from the base, *said paper supply roll mounting means moving with the rest member, and means for adjusting the position of the rest member* and supply roll mounting means with respect to the base." (Italics supplied.)

We have italicized the elements of this claim which must be relied upon to distinguish it from the prior art, and particularly the claims rejected by the Examiner. Claim 2 also calls for a head rest "within the extended projection of the support" and, in addition to claim 4, calls for "an exteriorly padded head rest on the upper side thereof" (the rest member) and for the concealment not only of the supply roll as called for in claim 4 but for the concealment of the adjustable means within the cabinet support.

We think it fairly discernible from what we have said relative to the testimony of plaintiff's witnesses, from the specification first filed as well as the numerous claims rejected by the Examiner over the prior art, that the original conception which the patentee entertained as to his invention related only to a roll of paper mounted underneath the head rest member of the table. It was only after the specifications were amended in the respects heretofore noted that the Examiner was persuaded to allow claims which included elements called for only in the amended specifications. It is upon this premise that the defendants argue, not without merit, that the claims are invalid because they include subject matter not within the original concept of the inventor. We need not, however, invalidate the claims on this ground in view of our conclusion that the claims are invalid even though it be assumed that the patentee originally conceived all that was disclosed by his specifications, including the amendments which he made thereto.

We see no point in referring to or discussing the numerous prior art patents on which the Examiner rejected numerous claims other than the patent to Nadelson (No. 1,967,422). He discloses a sanitary paper roll and feeding device to be used in combination with a medical or surgical table, and he recognizes the desirability of a dispenser "by which the doctor, physician or surgeon may conveniently and without difficulty immediately obtain a sheet of paper to cover the table." He discloses a

table with a head rest member capable of being elevated or lowered to suit the patient, with means for holding such member at any desired elevation. He shows a metal receptacle attached to the end of the rest member but on the outside, in which was contained the roll of paper, apparently concealed. What the instant patentee originally attempted to do, in which attempt he long persisted, was to obtain the allowance of claims which, in our view, showed nothing over the prior art except a change in the location of the roll of paper in reference to the head rest member. He placed it underneath such member, while Nadelson and other prior art patents had it attached to but on the outside of such member. As the Examiner stated, this change represented "only ordinary choice or mechanical design," and the location of the roll of paper remained the core of the invention notwithstanding it was claimed in combination with elements which were subsequently added upon the basis of amended specifications. The most important element thus added was the requirement that the rest member be mounted "within the vertical projection of the base" (claim 4; claim 2 contains substantially the same requirement). This in simple language means nothing more than that the head of the rest member was not to protrude beyond the end of the table. This requirement no doubt resulted in the concealment of the roll of paper when the rest member was in an extended rather than elevated position. Obviously it could not be otherwise than concealed when the rest member was in an extended position, that is, when the bottom of the rest member was in contact with the surface of the table. It is equally obvious that if the head member protruded beyond the end of the table, the roll of paper located in the rest member would not be concealed any more than it was in Nadelson. But we think nothing was added to the patentable status of the invention by the requirement that the end of the head rest be on a perpendicular line with the end of the table. Again, that was little if anything more than a matter of mechanical design. Other elements of the claims relied upon are of even less importance and bear no relation to the utility of

locating the paper roll beneath the head member. For instance, the provision in claim 4, "said paper support roll mounting means moving with the rest member," only states the inevitable. At any rate, it appears obvious that the paper roll and rest member would move simultaneously, the former being underneath the latter and attached thereto. And this claim provides "means for adjusting the position of the rest member and supply roll mounting means with respect to the base." The "means," so we suppose, refers to the counterbalancing spring attached to the opposite end of the head rest member so that the latter may be more readily placed in an elevated position. But this spring bears no relation to the operation of the roll of paper located beneath the head rest member. In other words, the action of the roll of paper would be precisely the same whether the elevation of the rest member was aided by the counterbalancing spring or whether it was elevated entirely by hand or some other means.

 There is no reason to doubt but that the patentee's table possessed utility, that it was more artistic and had a better psychological effect upon patients than tables previously disclosed—in other words, that it represented an improvement—but the fact remains that every element entering into the combination was old and served no different purpose in the combination than it served separately. Particularly is this so as to the paper roll concealed beneath the head rest member. The improvement which was achieved was merely the relocation of old elements, which we think was well within the sphere of the skilled artisan or mechanic, and certainly under repeated decisions of the Supreme Court as well as this court does not rise to the status of a patentable invention. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 90, 62 S.Ct. 37, 86 L.Ed. 58; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S. Ct. 127, 95 L.Ed. 162; F. W. Wakefield Brass Co. v. Mitchell Mfg. Co., 7 Cir., 191 F.2d 577, 579; Autographic Register Co. v. Uarco, Inc., 7 Cir., 182 F.2d 353, 357. In any event, even if we entertained doubt, we

would not be justified in refusing to accept the findings made by the District Court upon which its decision of invalidity rests.

Lastly, plaintiff argues that the District Court erred in treating the patent in suit as for a "machine" rather than for a "manufacture," as those words are used in the statute. Title 35 U.S.C.A. § 31. It appears to be plaintiff's theory that because of this alleged error the District Court employed an improper test in determining that there was no patentable invention.

Plaintiff attempts to distinguish the Great Atlantic & Pacific case, 340 U.S. 147, 71 S.Ct. 127, on the basis that the court there was considering a "machine." We think this distinction is unsound. There, the patent structure was a counter on which groceries were dispensed, and here it is a table on which patients are examined. We are unable to discern how the two structures can so readily be placed in different categories. At any rate, plaintiff cites no case in support of his contention on this point. In Collar Company v. Van Dusen, 23 Wall. 530, 90 U.S. 530, 563, 23 L.Ed. 128, the court stated: "Nothing short of invention or discovery will support a patent for a manufacture any more than for an art, machine, or composition of matter, for which proposition there is abundant authority in the decisions of this court."

The judgment of the District Court is Affirmed.