## BELTONE HEARING AID CO. v. AMERICAN SOUND PRODUCTS, Inc.

### No. 50 C 1250.

United States District Court
N. D. Illinois, E. D.
May 16, 1952.

Armin J. Herz and Dugald S. McDougall, Chicago, Ill., for plaintiff.

Maurice S. Cayne, Chicago, Ill., for defendant.

PERRY, District Judge.

In this lawsuit, the plaintiff charges the defendant with infringement of Reissue Patent No. 23,203 and Patent No. 2,495,546. The defendant denies infringement and validity of the patents alleged to be infringed.

The Posen Reissue Patent No. 23,203, issued March 7, 1950, to the plaintiff, is a reissue of Patent No. 2,482,288, issued September 20, 1949, on an application originally filed March 17, 1944. The Posen and Hanson Patent No. 2,495,546, dated January 24, 1950, was issued on application filed November 24, 1947.

According to the plaintiff's description, Reissue Patent No. 23,203 is directed to a single unit wearable electronic hearing aid having a number of alleged novel structural features which, in combination, permit its tubes, which, for reasons of the space economy required in such single unit hearing aids, are preferably placed at substantially the same height as the microphone, to be replaced or interchanged by a semi-skilled person, such as a dealer or a field service man, from the back side of the instrument casing which said microphone stays concealed in the casing.

The hearing aid of the Reissue Patent comprises a casing having a one-piece front wall and a back wall divided into an upper back cover and a lower back cover separately openable. The lower back cover is hinged and can be opened with a finger. It closes off the part of the casing which carries the batteries. The upper back cover can be opened only by removing screws; it closes off the portion of the casing which houses the microphone and the amplifier, including the midget tubes.

The upper portion of the casing is separated into front and back compartments by a panel; the tubes are mounted on the rear side of the panel, facing the upper back cover, and the microphone is mounted on the other side of the panel, where it is protected between the panel and the front cover. The tubes are of the plug-in type, each being held in place by a midget plug-in socket.

In the hearing aid of the patent, access to the tubes for replacement or interchange, can be had by opening the upper back cover. Opening the upper back cover does not, however, give access to the microphone, it being protected by the

panel even when the upper back cover is open. This arrangement permits tube exchanges to be carried out without the services of a factory expert, since a moderately skilled person can safely change tubes if the microphone be protected from damage during the operation. The microphone, being a very delicate, easily damaged instrument, cannot be entrusted to the handling of any but a highly skilled specialist.

The patented hearing aid made it possible for dealers to supply, for any given prospective user, a single-unit hearing aid, equipped with the exact combination of tubes best adapted to his hearing deficiency and sound tolerance. Similarly, the invention made it possible for the purchaser of a single-unit hearing aid to have the tubes conveniently and quickly changed from time to time to adapt the instrument to changes in his hearing needs.

An examination of the evidence reflects that the plaintiff's witness, on cross-examination, admitted that the Paravox instrument, which responds to the Tresise Patent No. 2,424,422, was the first hearing aid unit that embodied the batteries, microphone, and amplifying elements in the single casing small enough to be worn in the pocket of the person. The plaintiff, however, insists that there are three major differences between the Posen and Tresise patents. The Posen patent calls for a panel which is interposed between the tubes and batteries on one side and the microphone and amplifying elements on the other side whereas the Tresise patent places the tubes and the microphone on one side. In this manner, the plug-in tubes in the Posen device can be serviced without endangering the delicate microphone and amplifying parts. Secondly, the tubes in the Posen instrument are plugged in whereas the tubes in the Tresise device are soldered. Thirdly, the casing in the Posen patent has a back cover which is divided into distinct, separately openable parts. The lower half is a hinged cover which facilitates removal of the batteries merely by lifting the cover. The upper half is fastened to the instrument by screws. Any dealer can remove this back with the use of a screw driver and interchange the tubes. The Tresise patent also calls for an openable lower half and facilitates exchange of batteries. The upper half, however, forms one piece with the front part of the casing. This necessitates the sliding of the whole chassis out of the casing in order that tubes might be exchanged.

As to the first difference, the evidence shows that the Tresise Patent No. 2,424,422 issued July 22, 1947, and the Lybarger Patent No. 2,444,302, issued June 30, 1948, teach the use of an interposing panel in a wearable hearing aid on both sides of which are mounted the various elements of a hearing aid.

As to the second difference, the evidence reflects that the Lybarger patent shows the use of plug-in tubes in a hearing aid. According to the disclosures in this patent, such tubes "can be replaced without exposing the rest of the amplifier elements to view or to tampering." The Lybarger tubes differ from those of the Posen device in that the former are held in their sockets by screws where as the latter are held by spring sockets.

As to the third difference, the evidence indicates that the Reed Patent No. 1,345,-211, issued September 28, 1920, shows a case, which is "adapted to hold several different articles to any of which access may be readily had when desired without disturbing the others." It provides a removable front cover, and a pair of separable openable back covers, at least one of which is hingedly mounted. The Reed casing also provides for a panel extending longitudinally midway between its front and back walls, which panel may be used as a mounting for any articles. At this point, it should be pointed out that the Tresise patent, with its hinged lower back cover suggests a double back.

The second patent in suit, Posen and Hanson No. 2,495,546 is particularly directed to the insulating support which carries the various amplifier elements of a wearable electronic hearing aid. The patent, according to the plaintiff's description, teaches a particularly effective means of incorporating "printed circuits" into hearing aids involving the use of a two piece support for the amplifier. The

amplifier support consists of an outer member containing a central aperture and an inner member fitted therein. The outer member or frame is made of a material having high tensile, compressive and flexural strength; it carries the tube sockets, the volume and tone controls, the battery contact springs and any other parts likely to impart mechanical stresses to the amplifier support. The inner member should be made of a completely rigid material, such as steatite or other ceramic, and on it are placed the layer resistors, ceramic condensors and other elements of "printed circuits". By thus dividing the usual unitary support member into two parts, formed of dissimilar materials, the patent makes possible a hearing aid structure using a printed circuit and being, at the same time, substantially smaller than prior instruments in both size and thickness.

The plaintiff, in its patent, admits that the mounting of certain amplifier elements on a ceramic plate is old. Its witness made the same admission during the course of the testimony. The evidence also reflects that the Williams Patent No. 2,075,490, issued March 30, 1937, teaches the insertion of a panel within an opening in a frame. The Williams panel is adapted to carry a relay or the like and it is so mounted with respect to the frame that the vibration of the panel will not be transmitted to the frame but will be absorbed by the connection, mounting the panel on the frame. These connections are made of a resilient material so that any vibration imparted to the panel is absorbed and is not transmitted to the frame in which the panel is mounted.

The Reed and Williams patents were not before the Patent Office when the plaintiff's patent applications were being prosecuted.

█ "The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable.' Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Hamilton Mfg. Co. v. Illinois Surgical Supply Co., 7 Cir., 193 F.2d 938. In the view of this Court, the two patents in suit fail to meet this test. They represent a new combination of old elements. In the combination, the individual element serves no different purpose than it served as a separate entity. The improvement in plaintiff's device is due to the rearrangement and adaption of the old elements, which are the result of mechanical skill rather than inventive genius.

█ The plaintiff has introduced testimony as to the commercial success of its device, which corresponds to the two patents. In this respect it must be remembered that "commercial success without invention will not make patentability." Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corp., supra [340 U.S. 147, 71 S.Ct. 130].

In view of the foregoing, the two patents must be held invalid. Appropriate findings of fact, conclusions of law and decree will be filed in accordance with this memorandum.